Snow *v.* Snow.

COLLIER SNOW, *Adm'r, versus* ISAAC SNOW.

Where a testator bequeathed to his widow the use of his personal property during her life and widowhood, she to use what may be necessary for her support and convenience, and, after her decease or marriage, one-half of what remained to descend to his son A., and the other half to his son B., B. to come into possession "when he shall arrive at the age of twenty-one years, or at the death or marriage" of the widow, the legacy to B. is contingent, and he having died a minor, and before the widow died or married, it lapses and is void.

*It seems,* that where the bequest is absolute in its terms, but *to be paid* at a future time, it vests in the legatee, and is transmissible to his representatives if he dies before the time fixed for payment; but when the bequest is *to take effect* at a future time, or the time is annexed to the *legacy* itself, and not to the *payment* of it, it is contingent, and lapses by the death of the legatee before the time.

When a minor had been for some years at work on his own account, and died leaving no widow, issue or father surviving, his administrator may maintain an action for money had and received, against one who has collected his wages; and it is no defence that such person acted as agent for the mother of the minor, and paid what he collected to her, and that she distributed it amongst some of the minor's heirs.

ON REPORT of the facts by APPLETON, J.

THIS was an action for money had and received, brought by the plaintiff as administrator of Edward Snow.

William Snow, the father of the defendant and of Edward Snow, died in 1846, leaving a will, the provisions of which, so far as relevant to this case, are fully stated in the opinion of the Court.

Edward died before coming of age, and then his mother died without having married again. The plaintiff was appointed administrator on the estate of Edward, and commenced this action.

The plaintiff claimed to recover of the defendant any money in his hands arising out of half of the father's personal property bequeathed to Edward. But the Court ruled that the legacy to Edward did not vest in him, because he died a minor before his mother died or married.

It appeared that Edward had for some years followed the

sea upon his own account, and that after his decease the
defendant collected $70 wages due the deceased, besides his
apparel.

The defendant offered to prove that he received this money
while their mother was alive, collected it by her authority,
paid it to her, and had had no control or possession of it
since; and that the mother divided it amongst some of the
heirs. This testimony was excluded.

The facts were reported for the full Court to make such
order as the law and evidence should demand.

*J. A. Peters*, for the plaintiff, argued that Edward's debt-
or had no right to pay his wages to any one but his admin-
istrator. Neither the defendant, nor the mother, had any
claim to the money until administered upon. Nor does the
alleged division amongst some of the heirs constitute a de-
fence. 2 Kent's Com., Lecture 30, §1; *Jackson* v. *Coombs*,
7 Cowen, 36; same case, 2 Wend., 153; *Miles* v. *Boyden*,
3 Pick., 213. Edward having been acting for himself for
some years entitled him to his own wages against his father
or mother either. *Whiting* v. *Earl*, 3 Pick., 201; *Wodell*
v. *Coggeshall*, 2 Met., 89; *Canover* v. *Cooper*, 3 Barb.,
115.

2. The devise to Edward, if real estate, would clearly be
a *vested* remainder. 4 Kent's Com., 202. The same rule ap-
plies to chattels. 4 Kent, 281, 282, 283, 9th ed., and note
by the younger Kent. If so, his personal property went to
his administrator, and the defendant is liable in this action.

*Rowe & Bartlett*, for the defendant, contended that, as the
widow, by the will, had the absolute right to use what she
needed of the personal property, she had entire control of
it, and the devise over to Edward was inoperative. *Rams-
dell* v. *Ramsdell*, 21 Maine, 288. But, if not inoperative,
it was contingent, and never vested in him.

2. If the defendant had no authority to settle with Ed-
ward's debtor, then there has been no settlement, and the
debtor is still liable, and the money received by the defend-

ant belongs to the debtor.   But, if the plaintiff ratifies the settlement, he must ratify the whole transaction.   The defendant received the money, and paid it to the mother. Before he paid it, the plaintiff might have claimed it of him, but now it is too late.   If he accepts the settlement as binding, he must look to the mother's estate for the money. But, if this action can be maintained, the plaintiff cannot recover of the defendant the shares of those heirs who have received the money.

The opinion of the Court was drawn up by

TENNEY, C. J.—On June 12, 1846, William Snow, the father of the plaintiff's intestate and the defendant, made his will, which makes a part of this case.   The defendant was appointed administrator with the will annexed, but this suit is not against him in his capacity of administrator.

The testator devised to Lydia, his wife, the use, income and improvement of real estate described in the will, during her widowhood, or so long as she should remain his widow. He also bequeathed to her the use of all the stock on the homestead, which he owned, together with all the household furniture, including the bedding, clothing, crockery ware, hardware and all other articles used in and about the house. Also, all the farming tools, harnesses, carriages, equipage, and the articles used about the barns and stable.   Also, the use as above of the vessels, and their proceeds, as hereinafter mentioned, viz., one-fourth part of the Orrington Packet, one-fourth part of the vessel called the ———, one-eighth part of the vessel called the ———, and one-eighth part of the vessel called George.   Also, the privilege of using so much of the money which the testator had on hand when said will was made, as should be necessary for her support and convenience.   Also, the privilege of receiving all moneys, due by note or account, to be used as aforesaid if necessary, and the use and income and benefit of all his personal property, not named previously, wherever the same may be found, together with the privilege of taking off and

cutting all the wood and timber standing or remaining, at the time of the making of the will, on a parcel of land therein described, so long as she should remain his widow.

The testator devised to his son, the defendant, certain real estate after the marriage or decease of his wife Lydia; also, one half part of all his personal estate which should remain after the marriage or the decease of said Lydia, including all the articles specified in the bequest to his wife, provided he should support, &c., in health and sickness, and common education, Edward Snow, the plaintiff's intestate, until he shall be twenty-one years old, and provided, also, that he should support and maintain Betsey Snow, the testator's daughter, in health, sickness, &c., until Edward Snow, his son, should arrive at the age of twenty-one years. After that time, the said Isaac was to furnish and provide one half as aforesaid, until said Betsey should marry or choose to maintain herself, &c.

A devise was made to Edward, the son of the testator, of certain real estate, and the remaining part of all the testator's personal property, which should exist after the decease of his wife Lydia, referring to the same property specifically named in the bequest to his wife of the use of personal property. Then follows the following clause;—" Said Edward shall come into possession of the above named estate when he shall arrive at the age of twenty-one years, or at the decease or marriage of Lydia," the testator's wife. And it was provided that, at the age of twenty-one years, Edward should furnish one half part of what was necessary for the support of the testator's daughter Betsey, &c.

Edward Snow, the plaintiff's intestate, died when he was about twenty years of age, and, subsequently, his mother died, without having been married after the death of the testator.

The report of the case shows that Edward Snow had been for some years following the seas, upon his own account; that he had sailed in a brig, as mate, and died on the voyage or afterwards, and that the defendant went to New York,

whence Edward had sailed, brought home his wearing apparel, and settled with the master of the brig for the wages, and received therefor the sum of seventy dollars.

The defendant offered to show that the wages were received while the mother was alive, who lived with him, and that he went at her request and as her agent, and delivered the money so received to her, who divided it among some of the heirs, and that he has had no control or possession of it since. This evidence was not received.

The action is for money had and received, and the claim is for any money in the defendant's hands, arising out of the personal property devised to Edward, and also for the wages received by the defendant.

The presiding Judge ruled, that the claim first named could not be upheld, as Edward did not survive his mother, and died while he was a minor.

When a legatee, named in a will, dies before the death of the testator, the legacy is said to have lapsed, there being no person to take, at the time when the will is to take effect. 3 Bac. Abr., 476.

The general rule is, that if a legatee die before the testator, or before the condition upon which the legacy is given be performed, or, before it be vested in interest, the legacy is extinguished. Treat. Eq., lib. 4, pt. 1, c. 2, § 3. The rule will not extend to a legacy to two or more, for though, by the civil law, there is no survivorship among legatees, yet it is settled that a legacy to two or more, jointly, is not extinguished by the death of one, but will vest in the survivor. Gilb. Rep., 137; 2 Atk., 220. But when the legacy is to two or more, *severally*, or to be divided, share and share alike, and one dies, his share will lapse. 1 P. Wms., 700; 2 P. Wms., 489.

The testator gave "£100 apiece to the two children of I. S., at the end of ten years after his decease." The children died within ten years. Lord Chancellor COWPER said, "this is a lapsed legacy, and shall not go to the executors of the children; for the diversity is, when the bequest is to take

effect at a future time, and when the payment is to be made at a future time." "That whenever the time is annexed to the legacy itself, not to the payment of it, if the legatee dies before the time of payment, it is a lapsed legacy, in that case." *Ewer* v. *Jones*, 2 Salk., 415.

"If a contingent legacy be left to any one, as when he attains, or, if he attains the age of twenty-one, and he dies before that time, it is a lapsed legacy. But a legacy to one, *to be paid* when he attains the age of twenty-one years, is a *vested* legacy, an interest which commences *in præsenti*, although it be *solvendum in futuro*. 2 Black. Com., 513. And, in note 17, by Mr. Christian, it is said, "if the legacy is given when, or, if the legatee attains a certain age, or to him.*at* that age, the time is said to be annexed to the substance of the legacy, and it is not vested or transmissible to his representatives, if the legatee dies before that age." 2 Dane's Abr., c. 43, art. 3 and 4, pages 243, 244 and 245, where it is said in reference to the case cited from 2 Salk., and the distinction was taken, "where the payment is to be made at a future time," and "where the bequest is to take effect at a future time ;" for "whenever the time is annexed to the *legacy* itself, and not to the *payment* of it, if the legatee dies before the time of payment, it is a lapsed legacy."

The common law has been changed by the statute of Massachusetts, of Feb. 6, 1784, so that the principles which we have noticed have been modified in cases where a relative of the testator, having a devise of real or personal estate, dies before the testator, leaving lineal descendants, they take such estate as would have been taken by such deceased relative if he had survived. This provision is incorporated into our present revised statutes, c. 74, § 10, and is a reënactment of the code of 1841, in c. 92, § 19, and which is similar to the provision in the statutes 1821, c. 33, § 15. This provision cannot apply to the case before us, as it is reported, as it does not appear that Edward Snow left lineal descendants, nor did he die before the testator.

When the whole will in this case is examined, it cannot

be doubted, that the time when Edward Snow could be entitled to the possession of the property, which was of a personal character, was annexed to the legacy itself. A remainder, at most, was the subject of the bequest. It depended on two contingencies; one, whether any thing would remain at the death or the marriage of his mother, and the other, whether he would ever attain the age of twenty-one years. The fall of the legacy by the death or marriage of the mother, would not be avoided by the legacy of one half of the remainder of the property to Isaac, the defendant, as it would be if the legacy had been joint. The two were several and distinct one from the other. The one to the defendant was to come to his possession on the death or marriage of the mother, without restriction as to time.

The receipt of the wages of Edward Snow, as the mate of the brig, by the defendant, not being controverted, the facts offered to be shown will not avoid the liability to the plaintiff therefor. The money is treated by the defendant as that of the intestate. The mother had no legal claim for that money upon the master or the owners of the vessel. If payment had been refused, she could in no mode have enforced it; but it was purely gratuitous, and did not relieve the party indebted from liability still. But the plaintiff having treated the settlement made by the defendant as proper, it is to be regarded as a ratification of payment *pro tanto*, at least. The administrator of the intestate's estate alone could maintain a suit for this money, whether in the hands of the original debtor or the one who received it of him. The right of the mother to receive this money failing, the basis of the defendant's agency falls at the same time.

The delivery of the money so received to the mother, did not exonerate the defendant from his obligation to pay it to the plaintiff; having once the money in his hands, knowing it to have been the property of the intestate, the passing of it over to the mother did not relieve him, because she had no right to its custody as against the plaintiff. The distribution of it among the heirs, by her, was without authority, and he cannot invoke it for his protection.

It is insisted, for the defendant, that the ratification of the defendant's acts in the receipt of the money must be so extended as to embrace the ratification of the authority, derived from the mother of the defendant and the intestate. This proposition is not attempted to be sustained by any authority, and cannot be admitted. When the plaintiff found that the defendant had received the money belonging to the estate which he represented, (which is not denied by the latter,) he was entitled to the equitable action for money had and received, and he could not be bound by the fact that the defendant claimed to have acted as an agent for a person having no power over the fund which was in his hands. The evidence offered was properly excluded.

Other views have been presented on the first point in the case, by the counsel, which we have not considered, as they were not involved in the case. The construction of the will was one question presented, and the other was the admissibility of defendant's evidence, which was rejected.

According to the agreement of the parties, the defendant is to be defaulted on account of the money received by the defendant for the intestate's wages.

Rice, Appleton, Cutting, May and Kent, JJ., concurred.