HARRY G. McCARTNEY

*v.*

FRANKLIN OSBURN *et al.*

*Filed at Mt. Vernon November 22, 1886.*

1. WILL—*effect of the expression of a wish.* A wish of the testator, clearly expressed in his will, is equivalent to a positive direction or command.

2. SAME—*time of distribution—and herein, of the vesting of an estate, in interest, and in possession.* Where a will contemplates distribution at a period subsequent to the death of the testator, the time must be fixed by the will itself. It can not be left open, to be determined by the executors.

3. Where there is a simple devise to a class, and the will does not, expressly or by necessary implication, fix the time when the objects of the gift are to be ascertained or when distribution is to be made, the law will fix it at the testator's death, that being the time when the will first speaks. In such case, the gift vests, both in interest and in possession, at the same time, and after-born children will be excluded.

4. A devise vests in interest when the right of property first attaches, without regard to whether there is a present right of possession or not. When the right of possession accrues, the gift or devise is said to vest in possession, or the time of payment or distribution has arrived.

5. A gift by will always takes effect, both in interest and possession, at the death of the testator, when limited *per verba de presenti*, unless such vesting is expressly, or by necessary implication, deferred to a future period.

6. Where the gift is limited to take effect, both in interest and possession, upon some contingency or event which may or may not happen until after the testator's death, if the contingency or event happens after his death the gift will then vest absolutely, and if before his death, it will then vest at his death.

7. A gift of personal estate at a specified future time, or upon the happening of a certain contingency, will not vest until the time specified has arrived or the contingency has happened; but if the gift is general, and there is merely a simple direction that it be paid, or that the fund be distributed or divided, at a specified time or upon the happening of a like contingency, it will vest on the testator's death, and the payment or distribution, only, will be postponed. This rule, however, has no application to a devise of real estate.

8. Where there is a simple gift to a class, to be paid at a fixed time or upon an event which may happen after the testator's death, and nothing appears to show a contrary intention, the gift will vest in interest at the testator's death, and the time of distribution, only, will be deferred.

9. But if the element of futurity is annexed to the gift itself, and is not merely indicative of the time of payment, or if the time of payment is made

descriptive of the class that is to take, the gift will not vest in interest until the time so fixed for payment or distribution has arrived.

10. When there is a simple direction to divide at a specified time, the gift will not vest until the time of division; but where there is an express gift, accompanied with a direction to divide at such specified time, it vests at the testator's death, and the division, only, is postponed.

11. SAME—*executors taking the fee, in trust—when the equitable title will vest—awaiting the happening of a contingency.* Where a testator gives his executors discretionary power to sell, and convert all his estate into money, to be put at interest until the happening of a contingency, at which time it is to be divided among a designated class, the executors will take, by implication, a fee in the legal estate, for the purposes of the trust created by the will, and the equitable title will not vest until the happening of the contingency.

12. SAME—*when a legacy will lapse on the death of a beneficiary, and when it will inure to a survivor.* In case the devisees or legatees are specifically named or designated in the will, if one of them dies before the testator, his share will lapse; but where the devise is to an indeterminate class liable to change, as, where it is to the children of a person, the shares of those dying before the testator will not lapse, but will inure to the benefit of the survivors.

13. SAME—*taking per capita, or per stirpes.* If a testamentary gift be made to one person and the children of another person, as, for instance, to A and the children of B, A and the children of B, in the absence of anything to show a contrary intention, will take *per capita,* and not *per stirpes;* yet the opposite construction will prevail when the intention to that effect can be gathered from the context.

14. SAME—*devise to a class—who may take.* Where a gift or devise is to a class, none will take except such as are *in esse* at the time appointed for distribution. But, where the devise is to a class as tenants in common, with no provision for survivorship, and one or more of the class die after the gift or devise has taken effect in interest, and before the time for distribution has arrived, the shares of those so dying will go to their devisees or heirs.

15. And in case a gift or devise is limited to such of the children of a particular person as shall attain the age of twenty-one years, it has been held that the first child attaining that age is entitled to his share of the estate in proportion to the number of children *in esse* at that time, and that an after-born child will be excluded.

16. SAME—*the particular case—as to meaning of the word "heirs"— period of distribution—devise, whether per capita or per stirpes—interest of executors.* A testator, after making equal specific bequests and devises to his daughter A, then living, and C, the only son and heir of his deceased daughter B, authorized his executors to convert the residue of his estate into money, to be put at interest until the final distribution thereof, and expressed the wish that such estate be divided equally between "the heirs of the

said A" that might be living at the time of such division, and the said C, and that such division should not be until the youngest child of A should arrive at the age of twenty-one years, and then provided, that "if any of the heirs," after attaining that age, should wish to engage in business, etc., his executors might make advances to them, taking their notes therefor, bearing interest, to be deducted from their portions of the estate on final division. A had seven children living at the death of the testator, and one born after that event: *Held*, (a) That the words, "the heirs of the said A," meant the "children of the said A." (b) That the word "heirs," in the clause "should any of the heirs, etc., wish to engage in business," etc., was used to include the children of both A and B, as a common class. (c) That the devise to "the heirs of A" and to C, was unaffected by the specific legacies to A and C, but was an original devise or absolute gift to those entitled at the time the will took effect in interest, which was not until the youngest child of A arrived at the age of twenty-one years. (d) That the period for the distribution of such residue was not the death of the testator, but when the youngest child of A attained the age of twenty-one years. (e) That only such of the children as might be living at the period of distribution were entitled to share in such residue of the estate, and that children of A, born after the testator's death, might take, if living at the time of distribution. (f) That such residuum of the estate was to be divided between C and the children of A living at the time of the final division, *per capita*, and not *per stirpes*. (g) That the executors, by implication, took a fee in the legal estate for the purposes of the trust created by the will.

17. HEIRSHIP—*when it becomes fixed*. The law does not determine who shall be the heirs of any person, until his death; and one, to be an heir of another, must survive that other.

18. PARTITION—*interest or estate necessary*. A party claiming an interest in land can not maintain a bill for its partition, unless he has, at the commencement of the suit, a present, vested interest or estate in the same, or some part thereof.

19. FORMER ADJUDICATION—*when conclusive in a subsequent suit*. Before a former decision can be successfully invoked as an estoppel in another suit between the same parties, it must appear that the question is the same in both cases, and that the court, in the former suit, had power and jurisdiction to determine it.

20. SAME—*conflict of laws—construction of will in foreign jurisdiction—as to title to real estate in this State*. A decree of a court of another State, giving a construction to a will as to the nature and extent of the interests given the several devisees in real estate in such State, is not binding upon the courts of this State as to the interests of the same devisees, under the same will, in lands in this State. As to the lands in this State, our courts will construe the will for themselves. This case distinguished from *Hanna et al.* v. *Read et al.* 102 Ill. 596.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Messrs. WILLIAMS & THOMPSON, for the appellant:

The will should be construed by the laws of the domicile of the testator, and hence the construction put upon the will by the courts of Pennsylvania should control. Story on Conflict of Laws, 479 h; *Trotter* v. *Trotter*, 4 Bligh, 502; *Enohin* v. *Wylie*, 10 H. L. Cas. 1; *Harrison* v. *Nixon*, 9 Pet. 483; *Richards* v. *Miller*, 62 Ill. 417; *Hanna* v. *Read*, 102 id. 596; Wharton on Conflict of Laws, secs. 592, 597, 528.

That the law of the domicile prevails in the interpretation of wills of real estate, see *Crusoe* v. *Butler*, 36 Miss. 150; *Danelli* v. *Danelli*, 4 Bush, 51; *Bible Society* v. *Pendleton*, 7 W. Va. 79; *Stewart* v. *Garnett*, 3 Sim. 398; *Atkinson* v. *Staig*, 13 R. I. 725.

The primary rule of construction is the intention of the testator. *Richards* v. *Miller*, 62 Ill. 424; *Brownfield* v. *Wilson*, 78 id. 472; *Heslop* v. *Gatton*, 71 id. 528; *Mason* v. *Ely*, 38 id. 141; *Doebly's Appeal*, 64 Pa. St. 9.

That the devise is *per stirpes*, and not *per capita*, see 2 Jarman on Wills, (5th Am. ed.) *194, 195; *Pitney* v. *Brown*, 44 Ill. 363; *Kelley* v. *Vigas*, 112 id. 242; *Balcolm* v. *Haynes*, 14 Allen, 204; *Risk's Appeal*, 52 Pa. St. 273; *Lyon* v. *Acker*, 33 Conn. 222; *Lachlan* v. *Downer*, 11 B. Mon. 32.

The word "heirs," will be taken in its literal meaning, unless the context clearly indicates a different intention. *Richards* v. *Miller*, 62 Ill. 417; *Rawson* v. *Rawson*, 52 id. 62; *Williamson* v. *Williamson*, 18 B. Mon. 330.

As to when a devise takes effect in interest, and as to the period of distribution, see *Ridgway* v. *Underwood*, 62 Ill. 424; *Duryea* v. *Duryea*, 85 id. 48; *Blatchford* v. *Newberry*, 99 id. 11; *Hempstead* v. *Dickson*, 20 id. 193; *Nicoll* v. *Scott*, 99 id. 529; *Cheney* v. *Teese*, 108 id. 473.

Mr. D. T. Watson, also for the appellant:

When an estate is granted to a class of persons described as survivors, such estate does not usually vest until the time designated for the beginning of the enjoyment of the estate for that class of persons. *Cheney* v. *Teese*, 108 Ill. 482; *Ridgway* v. *Underwood*, 62 id. 424; *Duryea* v. *Duryea*, 85 id. 48.

The legacy being to Harry G. McCartney by name, his interest vested at the testator's death. *Provenchen's Appeal*, 67 Pa. St. 466; *Seibert's Appeal*, 1 Harris, 502.

That the will contemplated a division *per stirpes*, see *Archer* v. *Legg*, 30 Beav. 192; *Clark* v. *Lynch*, 46 Barb. 83; *Risk's Appeal*, 2 P. F. Smith, 273; *Balcolm* v. *Haynes*, 14 Allen, 204; *Fissel's Appeal*, 3 Casey, 55; *Alder* v. *Beall*, 11 G. & J. 123.

The first great rule is the intention of the testator. *Thompson's Appeal*, 89 Pa. St. 36; *Koppenhaufer's Appeal*, 87 id. 196.

This intention prevails over all minor rules of construction. *Harris Estate*, 74 Pa. St. 453; *Wright's Appeal*, 89 id. 67; *Bainbridge's Appeal*, 97 id. 482.

If the will leaves the question doubtful, the court should follow the intestate law, and give to Mrs. Osburn the one-half, and to Harry G. McCartney, as "only heir" of his mother, the other half. *Lipman's Appeal*, 6 Casey, 180; *Grim's Appeal*, 88 Pa. St. 333; *Harris' Estate*, 74 id. 453.

As showing that a *per stirpes* division was intended, see *Minter's Appeal*, 4 Wright, 114; *Raymond* v. *Millhouse*, 45 Conn. 473; *Clark* v. *Lynch*, 46 Barb. 82; *Arth's Appeal*, 7 Casey, 267; *Gring's Appeal*, 7 id. 292; *Young's Appeal*, 83 Pa. St. 92; *Hamlet* v. *Hamlet*, 12 Leigh, 350; *Witmer* v. *Ebersole*, 5 Barr, 458; *Baskin's Appeal*, 3 id. 304.

If an action be brought, and the merits of the question be discussed between the parties, and there is a final judgment for either, they will be concluded. *Greatly* v. *Bromley*, 7 T. R. 456; Broom's Legal Maxims, *229-231.

Mr. N. M. Jones, for the appellees:

When the law of the domicile conflicts with the law of the *situs*, as to the construction of wills in regard to realty, the law of the *situs* will prevail.   1 Redfield on Law of Wills, 298, sec. 8; Wharton on Conflict of Law, secs. 273, 278, 288, 597; Rorer on Inter-State Laws, 4, 44, 168, 204, 207, 209, 210; *West* v. *Fitz*, 109 Ill. 425.

The signification of the word "heirs," in all cases, is a question of intention.   *Williamson* v. *Williamson*, 18 B. Mon. 330.

A devise to the heirs of a living person will be construed as being to the children of such person.   2 Jarman on Wills, 615; *Butler* v. *Huestis*, 68 Ill. 594; *Nicoll* v. *Scott*, 99 id. 529; *Bland* v. *Bland*, 103 id. 11; *Morton* v. *Barrett*, 22 Me. 262; *Bailey* v. *Patterson*, 3 Rich. (S. C.) 157; *Ingram* v. *Smith*, 1 Head, 411.

The intention governs in the construction of wills.   *Peter* v. *Beverly*, 10 Pet. 566; *Funk* v. *Eggleston*, 92 Ill. 519; *Peoria* v. *Darst*, 101 id. 610.

All parts of the will must be construed together.   *Bland* v. *Bland*, 103 Ill. 11; *Friedman* v. *Steiner*, 107 id. 125; *Lunt* v. *Lunt*, 108 id. 307; *Hamlin* v. *Express Co.* 107 id. 443.

That the division should be *per capita*, see *Kelley* v. *Vigas*, 112 Ill. 242; *Huston* v. *Crook*, 38 Ohio St. 328; *Kean* v. *Roe*, 2 Harr. 103; *Lugar* v. *Harmon*, 1 Cox, 258; *Ingram* v. *Smith*, 1 Head, 411; *Bryant* v. *Scott*, 1 Dev. & B. Eq. 155; *Lee* v. *Lee*, 39 Barb. 172; *Burnett* v. *Burnett*, 30 N. J. 595; *Brittain* v. *Carson*, 46 Md. 186; *Richards* v. *Miller*, 62 Ill. 420; *Rawson* v. *Rawson*, 52 id. 62; *Pitney* v. *Brown*, 44 id. 363.

Mr. Justice Mulkey delivered the opinion of the Court:

This is a controversy between the appellant, Harry G. McCartney, an only child of Jennie W. McCartney, deceased, on the one hand, and the children of Henrietta W. Osburn, a sister of the said Jennie W. McCartney, on the other, about the extent of their respective interests in certain valuable real

estate in Cook county, the object of the bill being to have the lands in question partitioned and divided between them.

The parties all claim under the will of their grandfather, Griswold E. Warner, who died at Sewickley, his residence and domicile, in the State of Pennsylvania, on the 7th day of March, 1873, where he had previously, on the 1st of January of the same year, made and published his last will and testament. The estate of the testator, exclusive of debts, amounted, at his decease, to some $400,000. About one-half of said amount consists of lands lying in this State, being the same involved in this suit. The testator also, at his decease, owned lands in the States of Pennsylvania, Ohio and Nebraska. The bill also seeks a partition and division of some sixty-seven lots in said Cook county, which the executors' acquired in the settlement of certain claims due the estate; but as the correctness of the decree below as to these lots is not questioned, no further notice need be taken of them. At the time of making the will, Henrietta Osburn had seven children, and another was born after the testator's death.

Appellees insist that the residuum of the estate given by the third clause of the will must be equally divided between the nine grandchildren,—or, in other words, that each grandchild, Harry included, is entitled to one-ninth of the estate, and no more. On the other hand, it is contended by appellant that the will contemplates a division of the estate *per stirpes*, and not *per capita*, as is claimed by appellees, and that he is therefore entitled to one-half, instead of one-ninth. The court below sustained the view of appellees, and entered a decree accordingly. It appears, however, that before the commencement of this suit a like controversy arose between the parties, in the State of Pennsylvania, as to the proper construction of the will in the respect stated, and the matter having been brought before the Supreme Court of that State, a conclusion was reached there directly opposite that arrived at by the lower court in this case, and counsel for appellant

contend that the Pennsylvania decision is not only correct on principle, but that it is absolutely conclusive upon appellees as an estoppel, upon the general principle announced in the *Hanna-Read case,* 102 Ill. 596. However this may be as to the first branch of the contention, we have no hesitancy in holding that the second is not tenable. A moment's recurrence to a few of the admitted principles upon which the doctrine of estoppel rests, we think, will fully demonstrate the correctness of this conclusion.

Before a former decision can be successfully invoked as an estoppel in another suit between the same parties, it must appear that the question is the same in both cases, and that the court in the former suit had power and jurisdiction to determine it. The controversy, here, is about the quantum or extent of interest which the parties, respectively, have in certain lands in the State of Illinois, and the question to be determined, as respects the appellant, is, whether he has a half interest or merely one-ninth. As respects the appellees, the question is, whether they are each entitled to a ninth interest, or to a sixteenth, only. It is manifest the courts of Pennsylvania had no power or jurisdiction to pass upon either of these questions, nor did they attempt to do so. It is true, they passed upon a question like these, and the decision upon them, as an expression of opinion by that court, is entitled to the highest respect, but that is all. While the decision of that court is persuasive, it is not imperative. Nor does the fact that this court, in passing upon these questions, may place a construction upon the will different from that adopted by the Pennsylvania courts, which will lead to a diversity of interests between the devisees in the two States in respect to the same kind of property, make any difference. Such a contingency is the inevitable result of the complete independence of the courts of the two States in matters within their exclusive jurisdiction. The will, through which all the parties claim, is the written evidence of their respective titles

and interests in and to the land sought to be partitioned, and the construction to be placed upon it presents a question of law which this court must determine for itself. While it was entirely competent for the Pennsylvania courts to construe the will, and determine the rights of the parties to the property there, yet they could make no order, decree or ruling with respect to the legal effect of the will, that would deprive this court of the right to construe that instrument for itself, so far as it relates to lands in this State. Where a testator, by a single will, devises lands lying in two or more States, the courts of such States will respectively construe it as to the lands situated in them, respectively, in the same manner as if they had been devised by separate wills.

We think it clear, the circumstances in this case materially differ from those in the *Hanna-Read case,* and call for the application of quite a different principle. If, in the litigation in Pennsylvania, the question of the testator's insanity at the time of making the will had been put in issue, and determined by the courts there, and the same question had afterwards been raised in this suit, then the two cases would have been analogous, and the principle laid down in the *Read-Hanna case* would apply to this. But such is not the case. The difference is radical and fundamental. In the case suggested, the Pennsylvania court would have the power to pass upon the question of insanity, but not upon the rights of the parties to land lying in this State.

Since we are unable to concur in the view that the decision of the Pennsylvania courts is conclusive upon this, it becomes necessary to examine the will for ourselves, and give it that construction which, in the light of the authorities, we believe will best effectuate the testator's intentions in disposing of his property.

The following clauses of the will are conceded to be the only ones that throw any light upon the question to be considered:

"*First*—After all my debts due at my decease are fully paid, and after all donations for either charitable or religious purposes I may hereafter make are also paid, I give, devise and bequeath to my daughter, Henrietta W. Osburn, wife of Franklin Osburn, the house she now occupies in the borough of Sewickley, aforesaid, together with one and one-half acres of ground attached to the same; also, all the furniture, bedding, library, etc., now in the house I now occupy, or may occupy at the time of my decease.

"*Secondly*—I give, devise and bequeath to Harry G. McCartney, minor, and only heir of my late daughter, Jennie W. McCartney, wife of the late John G. McCartney, deceased, in addition to such other bequests hereinafter made, $30,000, which my executors are requested to pay over to him, the said Harry, when he arrives at the age of twenty-one years, together with the interest on the same, to be paid said Harry after my decease, yearly, and every year, or so much of said interest as he may require for his support and education, and the balance, if any, to be loaned, on interest, for his benefit.

"*Thirdly*—The remainder of my estate, both real and personal, that I may possess at the time of decease, my executors, if they should think it advisable to sell any or all of my real estate, they are authorized to do so, and all moneys received from such sales, and all other money that may from time to time come into the hands of my executors, I wish put at interest until there is a final division made of my estate, which I wish to be equally divided between the heirs of the said Henrietta that may be living at the time of said division, and the said Harry G. McCartney, each to share and share alike.

"*Fourth*—I would rather prefer not to have a division made of my estate until the youngest child of Henrietta arrives at the age of twenty-one years; but should any of the heirs, after arriving to that age, wish to engage in business, and wish to realize any portion of their interest in said estate, my

executors can give them such an amount as they may think proper, and take their individual note or notes, bearing interest, to be added thereto, and deducted from their respective portions of said estate on the final division of the same; and should any of said heirs aforesaid, at the time of the final division of said estate, be considered by my executors' to be incompetent or incapacitated, either in mind or body, or from intemperance, to take charge or manage their respective interests in said estate, my executors are hereby requested to pay such, nothing more than the interest, annually, on their respective portions of said estate, until said incapacity does no longer exist. For the purpose of carrying out the foregoing will and testament, I hereby designate and appoint Franklin Osburn and David N. White my lawful executors."

The first question to be considered is, what is meant by the word "heirs," as it occurs in the third clause of the will. The lower court, in an able and elaborate opinion, reaches the conclusion that it means children, and that the will should receive the same construction as if the word "children" was substituted for the word "heirs." On the other hand, the Supreme Court of Pennsylvania hold, that the word "heirs," in the connection stated, is used, in its more general and technical sense, to signify all such relations of Mrs. Osburn, whether lineal or collateral, as would, under the law, be entitled to succeed to Mrs. Osburn's estate upon her dying intestate before the dispositions of Warner's will take effect in interest. We can readily conceive of a state of facts that might well have happened, under the will, in which this difference of construction would have become important; yet, under the circumstances as they have actually transpired, it can be of little importance, if we assume, as both parties seem to do, that the time has already arrived when the objects of the testator's bounty are to be determined, for whether the one or the other construction prevails, the same parties, in either case, will take. The utmost that can be claimed is,

that the use of the word "heirs," in the extended sense indi-
cated, favors the theory that a division *per stirpes* was in-
tended, and this we do not regard of sufficient importance to
require special notice here. The general discussion further on
must suffice for an answer to whatever there is in the claim
suggested.

All of the provisions of the will considered, we have no
doubt of the correctness of the conclusion of the court below
in holding that the expression, "heirs of Henrietta," means
simply the children of Mrs. Osburn. In the very next sen-
tence following the one in which those words occur, the testa-
tor expresses a wish that the division of the estate, which is
referred to in connection with the expression "heirs of Henri-
etta," be deferred until the *youngest child* of Henrietta arrives
at the age of twenty-one years. That the words, "child of
Henrietta," are here used in the same sense as "heirs of
Henrietta," in the preceding sentence, can not seriously be
doubted. Indeed, the Supreme Court of Pennsylvania admit
this. It is true, the force of the admission is sought to be
qualified by limiting it to what is said in reference to the time
of division; yet it is not apparent, at least to the writer, how
the word "heirs," when used in the same place, in the same
instrument, can mean a given class of persons for one pur-
pose, and yet a different class of persons for another purpose.
The testator having, in the second clause of the will, spoken
of Harry G. McCartney as the only *heir* of his deceased
daughter, Jennie W. McCartney, and of the children of Mrs.
Osburn as "heirs of Henrietta," in the third clause then pro-
ceeds: "But should any of the *heirs*, after arriving at that
age, (twenty-one years) wish to go into business," etc. Here
the testator, by the expression, "the heirs," evidently means
to include the children of both of his daughters, thus bringing
all his grandchildren, the remaining objects of his bounty,
into a common class, and clearly placing them on a common

footing, at least so far as that particular provision of the will is concerned.

It is a matter worthy of note, that the testator, at the time of making his will, was fully cognizant of the circumstances and surroundings of his family, none of whom were forgotten in the distribution of his property. One of his daughters was dead. She had left surviving her, a son and only child. The other daughter was alive, having a living husband and seven living children around her. All this, with the exception of the number of Mrs. Osburn's children, appears upon the face of the will itself. His children, both living and dead, were clearly in his mind when drawing his will. Their issue equally occupied his attention. To Harry McCartney he refers by name, and also characterizes him as the heir of his deceased mother. The others, he refers to by the title and description of "heirs of Henrietta," though their mother was then living, and, consequently, could have no heirs, in the technical sense of that term. Again, as we have just seen, he groups both sets of children together under the common designation, "the heirs." Keeping all this in view, the conclusion would seem irresistible that the testator, in using the expression, "heirs of Henrietta," must have meant simply the children of Mrs. Osburn. This view seems to be strongly confirmed by the use of the qualifying expression, "*living at the time of said division*," in connection with the words, "heirs of Henrietta." Had the testator, by the latter expression, meant merely that indefinite class of relations entitled to take under the Statute of Descents, there would have been no occasion for using the qualifying words in question. Children are always liable to die, but the law never determines, in any case, who the heirs are till the ancestor dies,—consequently they are always, at that time, a living class. Dead persons never take. If, therefore, the testator, in using the words, "heirs of Henrietta," meant nothing more than that indefinite and then unknown class of persons whom the law, at the designated period,

would point out as her heirs, it is manifest the use of the words, "*living* at the time of division,*" was wholly superfluous.

Following the line of argument pursued by counsel, we come now to the main question discussed in the briefs, namely, whether the rule *per capita* or *per stirpes* is to be applied in the division of the land in controversy. There is a question, however, underlying this, barely referred to in the argument, that first demands attention. If it should be conceded, for the purposes of the argument, that appellant, under the limitations of the will, is entitled to one-half the land in controversy, the important question would still remain, whether the children of Mrs. Osburn, now living, have, under the limitations of the will, a present vested interest in the other half, for if they have not, it is very clear they can not maintain a bill for its partition. Both parties agree that the devise in question is to a class, so far as the heirs or children of Mrs. Osburn are concerned, and of this there can be no question. The only thing about which they differ is, whether, by the terms of the will, Harry McCartney is made a member of that class.

Waiving this matter, and leaving him, for the present, altogether out of view, the question recurs, does the record before us show a present vested interest in the Osburn children. It is believed to be universally true that where there is a simple devise to a class, and the will does not expressly, or by necessary implication, fix the time when the objects of the gift are to be ascertained or when distribution is to be made, the law itself will fix it at the testator's death, that being the time when the will first speaks. In such cases the gift to the devisees vests, both in interest and possession, at the same time, and after-born children will be excluded. This will fully appear from authorities hereafter cited. Every testamentary disposition is either to a specifically designated person or persons, or to an indefinite class, which is liable to fluctuate, from the births or deaths of such as come within

the description of the class. When the devise is to the children of a living parent, the class is liable to fluctuate, from both causes, up to the time the gift takes effect in interest, which is most frequently at the death of the testator, but not always so. In the former case,—that is, where the devisees are specifically pointed out, whether by name or otherwise,—if one or more of them die before the testator, the shares of those so dying will lapse; yet, in the latter case, the shares of those dying before the testator, or, indeed, at any time before they vest in interest, will not lapse, but will inure to the benefit of the survivors. Strictly speaking, in contemplation of law the class to whom a gift or devise is limited, consists, in all cases, exclusively of such persons coming within the description of the class as are *in esse* at the time the gift or devise, by its own limitation, takes effect in interest, and such as are born before distribution, where distribution is deferred to a subsequent period. Those that die before the gift takes effect in interest, are not regarded as having ever belonged to the class.

It is hardly necessary to remark that a gift or devise is said to vest in interest when the right of property first attaches, without regard to whether there is a present right of possession or not. When the right of possession accrues, the gift or devise is then said to vest in possession,—in other words, the time of payment or distribution has then arrived. Most of the cases to be met with in the books relating to the vesting of testamentary dispositions, will be found to fall within one or the other of the following classes: First, where the gift takes effect, both in interest and possession, at the death of the testator,—and this is always the case when limited *per verba de presenti*, unless such vesting is expressly, or by necessary implication, deferred to a future period; second, where the gift is so limited as to take effect, both in interest and possession, at a specified time subsequent to the testator's death; third, where it is limited to take effect in interest at

the testator's death, but the vesting in possession is deferred to a future period; and fourth, where the gift is limited in such a manner as to take effect, both in interest and possession, upon some contingency or event which may or may not happen till after the testator's death. If the event or contingency happens after his death, the gift will, of course, then vest absolutely; if before, it will then so vest at the testator's death. These several kinds of limitations are applicable alike to classes and individuals.

With respect to cases falling within the first and second classes above mentioned, nothing special need be said, except, perhaps, to remark, that where the gift or devise is to a class, none will be permitted to take except such as are *in esse* at the time of distribution. This principle, however, applies to all gifts to classes, with the qualification, that where the gift or devise is to a class, as tenants in common, with no provision for survivorship, and one or more of the class die after the gift or devise has taken effect in interest, and before the time of distribution, the shares or portions of those so dying will go to their devisees, or, in case of intestacy, to their heirs or next of kin, as the case may be. Even where a gift or devise is limited to such of the children of a particular person as shall attain a given age,—twenty-one years, for instance,—it is held, the first child attaining the required age is entitled to have allotted to him his portion of the estate, and since his share must necessarily be determined upon the basis of the number of children composing the class at that time, it is well established in such cases that after-born children, who would otherwise be entitled to take, are excluded, (*Gimblett* v. *Purton*, 12 L. R. Eq. 427,) while a gift to a class falling within either the third or fourth divisions above mentioned will open to let in after-born children, subject to the limitation, they must be *in esse* at the time of distribution. Yet, after the estate has once vested in interest, except in cases of joint tenancy, or where the right of survivorship is expressly, or by

necessary implication, given, the shares of such as die before distribution will not inure to the benefit of the survivors, as they would do if the estate had not vested in interest before their decease, but will devolve upon the legal representatives of those so dying. *Middleton* v. *Messenger*, 5 Ves. 136; *Evans* v. *Jones*, 2 Coll. Ch. 516; *Watson* v. *Watson*, 11 Sim. 73; *Walker* v. *Shore*, 15 Ves. 121. Cases falling within the third and fourth classes mentioned, most frequently occur where a limited estate in the property bequeathed has been first carved out, with a gift over, to take effect at a specified time, or upon the happening of some contingency, or the occurring of some event, such as the death of the tenant of the particular estate, or of some other designated person.

In ascertaining the period at which a gift vests in interest, the cases last mentioned are to be carefully distinguished from those in which no preceding estate or subordinate interest has been first carved out of the property devised, otherwise there will sometimes be an apparent conflict between cases, when, in fact, there is none at all. The property involved in this case, however, is unaffected by the specific legacies to Harry McCartney, Mrs. Osburn, or to others. No preceding estate or subordinate interest is carved out of it. The devise is an original, absolute gift to those entitled at the time the will takes effect in interest. This being so, the inquiry arises, is the limitation in the present case a simple devise to the children, to take effect in interest and possession at the death of the testator, or does the gift vest in interest at his death, but not in possession till some future period? Or, again, does the gift take effect, both in interest and possession, at a period subsequent to his death.

The rule is well settled, that a gift of personal estate at a specified future time or upon the happening of a certain contingency, will not vest till the time specified has arrived, or until the contingency has happened, as the case may be. But if the gift is general, and there is merely a simple direction

that it be paid, or that the fund be distributed or divided, at a specified time, or upon the happening of a like contingency, it will vest at the testator's death, and the payment or distribution only will be postponed. *Chaffers* v. *Hill*, 3 Jur. 577; *Wadley* v. *North*, 3 Ves. 364; *Hixon* v. *Oliver*, 13 id. 113; *Mackell* v. *Winter*, 3 id. 236. This distinction, however, by the current of authority, has no application to a devise of real estate. The rule was borrowed from the civil law by the ecclesiastical courts, and was followed by the other courts of England in respect to gifts of personal property only. As to real property, the courts went in the opposite direction, rather, even so far as to hold that a legacy, charged upon real estate, and payable at a future day, sinks, as to the real estate, by the death of the legatee before the time of payment, and in such case the assets could not be marshaled. (*Pearce* v. *Loman*, 3 Ves. 135.) But since, with us, all debts are, by statute, made a charge upon real estate as well as personal estate, the rule or distinction in question has become practically of but little importance.

Recurring now to the more vital points in the case, we will say, in general terms, that, all the provisions of the will considered, we do not think it was the intention of the testator that the residue of his estate in question, including the property now in dispute, should be divided at his death. The language of the fourth clause is: "I would rather prefer not to have a division made of my estate until the youngest child of Henrietta arrives at the age of twenty-one years." These words leave no doubt as to what the testator's intentions and wishes were with respect to the time of distribution. Nor does the fact that his intentions are expressed in the form of a wish, make them any the less imperative. It is a familiar doctrine in the law of wills, that a clearly expressed wish by the testator is equivalent to a positive direction or command. But the testator does not stop at this. In the following sentence he proceeds to authorize his executors to make advances

to such of the children as should attain the age of twenty-one, and should be desirous of going into business. These provisions of the will are wholly inconsistent with the theory that the persons entitled to take are to be ascertained, and the property distributed, at the death of the testator. Indeed, the whole scheme of the will forbids the adoption of such a theory.

In this connection, it is proper to remark, that where a will, as in this case, contemplates distribution at a period subsequent to the death of the testator, the time must be fixed by the will itself. It can not be left open, to be determined by the executors, as whim or caprice may suggest. A will, therefore, should not be so construed as to confer such a power on the executors. *Hill* v. *Chapman*, 1 Ves. 405, (Seemnes ed.) note b; *Jenkins* v. *Freyer*, 4 Paige, 47; *Butler* v. *Ommancy*, 4 Russ. 70. By the English chancery rule, executors are given twelve months from the death of the testator in which to pay vested legacies, where a different period is not fixed by the will itself.

As we construe the will, the time of distribution is fixed when the youngest child of Mrs. Osburn attains the age of twenty-one years,—a period which has not yet arrived. While, as we have just seen, a gift to a class may be so limited as to take effect in interest at the testator's death, and yet not vest in possession till a future period, still we do not think this is a case of that kind. As already seen, the general rule is, that when there is a simple gift to a class, to be *paid* at a fixed time, or upon an event or contingency which may happen after the death of the testator, and nothing appears to show a contrary intention, the gift will vest in interest at the testator's death, and the time of distribution, only, will be deferred. If, however, the element of futurity is annexed to the gift itself, and is not merely indicative of the time of payment, *or if the time of payment is made descriptive of the class that is to take*, the gift will not vest in interest till the time so fixed

for payment or distribution has arrived. *Williams* v. *Williams,* 6 L. R. Ch. 782; *Festing* v. *Allen,* 5 Hare, 572; *Vawdry* v. *Geddes,* 1 R. & M. 203; *Bull* v. *Pritchard,* 5 Hare, 572; *Taylor* v. *Gould,* 10 Barb. 388; *Burrows* v. *Sherm,* 22 How. Pr. 169; *Snow* v *Snow,* 49 Me. 159; *Moore* v. *Smith,* 9 Watts, 403; *Illinois Land and Loan Co.* v. *Bonner,* 75 Ill. 315; *Collier* v. *Slaughter,* 20 Ala. 263; *Butler* v. *Butler,* 3 Barb. Ch. 304; *Radcliff* v. *Bagshaw,* 6 Tenn. 512.

Waiving the consideration that the distinction between a gift at a specified time, and a gift generally, *to be paid* at a like specified time, has no application to a devise of real property, and applying to the limitation under consideration the most liberal rule in favor of vesting, still we do not think the property in controversy has yet vested in interest. It will be observed, that no direct gift to the devisees is to be found in the will, but only such as is implied from the testator's expressed wish that the estate should be divided between them; yet we regard this as equivalent to a direct gift. The devise, as we construe it, is an original, absolute gift, at a particular time, to such of the children of Mrs. Osburn *as shall be living at the* designated time. By the terms of the limitation the element of futurity is clearly annexed to the gift itself, and is descriptive of those who are to take. It is only those who are living at that time that come within the description of the class, and to say that parties may take a vested interest under a devise to a class who do not answer all the marks by which the class is to be ascertained, is to confound all distinctions, and disregard the plain requirements of the will. The only thing in the will that affords the slightest foundation for the construction that would give the children of Mrs. Osburn a vested interest in the estate, at the testator's death, is found in the following language, occurring in the fourth clause of the will, namely: "But should any of the heirs, after arriving at that age, wish to engage in business, and wish to realize any portion of *their interest* in said estate, my executors *can*

give them such an amount as they may think proper, and take their individual note or notes, bearing interest, to be added thereto, and deducted from their respective portions of said estate on the final division of the same."

We are of opinion no special significance is to be attached to the fact that the testator in this connection speaks of the heirs' "interest in" or "portion of" the estate. In the connection in which these expressions occur, the testator doubtless means nothing more than the presumptive or prospective interests or portions of the children. (*Ring* v. *Hardwick,* 2 Beav. 352; *Lake* v. *Robinson,* 2 Mer. 363, 381, 384; *Eccles* v. *Berkett,* 4 De G. & S. 105.) This view, we think, is clearly strengthened by the reference to the final division of the estate in the conclusion of the citation. At any rate, the expressions in question can not, on any principle of recognized construction, be permitted to control a clear and unequivocal limitation like the present, defining the time of distribution, and the class who are to take. This is expressly ruled in *Bull* v. *Pritchard,* 5 Hare, 567, and *Vawdry* v. *Geddes;* 1 Russ. & Mylne, 203. In addition to this, we think the fact that the testator required his executors to take notes for the amount of the advances, is a circumstance tending strongly to show that it was not his intention that the estate should vest in interest till the period of distribution,—or, in other words, till the youngest child of Mrs. Osburn attained the age of twenty-one years. The same distinction which is taken between a gift on a particular day, and a gift *to be* paid on such day, is also taken between a case like the present, where there is a simple direction to divide at a specified time, and where there is an express gift, accompanied with a direction to divide at such specified time. In the first case, the gift does not vest till the time of division; in the second, it vests at the testator's death, and the division only is postponed. (2 Jarman on Wills, 455, *et seq.*) On page 457, the author expressly says: "Where the only gift is in the direction to pay or dis-

tribute at a future age, the case is not to be ranked with those in which the payment or distribution, only, is deferred, but is one in which time is of the essence of the gift." That is exactly the case here. In short, we hold the executors take, by implication, a fee in the legal estate, for the purposes of the trust created by the will, and that the equitable interest does not vest till the youngest child of Mrs. Osburn attains the age of twenty-one years.

It necessarily follows, from this conclusion, that the present suit, in so far as it seeks a division of the land in question, is prematurely brought. It is manifest, that if the time of distribution is not fixed as stated, the will does not determine the time at all, and hence it is fixed, as matter of law, at the death of the testator; for, as we have already seen, it is not a matter which can be left open, to be determined in the discretion of the executors. So, if we concede the will does not fix the time of distribution, and that consequently the estate vested, both in interest and possession, at the testator's death, then it is very clear, under the authorities, Mrs. Osburn's youngest child would not be entitled to take at all, as she was born more than a year after that time. This, of course, would lead to a reversal of the decree of the court below, as the decree places the youngest child upon the same footing with the other children.

Having reached this conclusion, we should feel inclined to withhold the expression of any opinion upon the question mainly discussed by counsel, namely, whether the property is to be divided *per capita* or *per stirpes*, but for the fact the will, as already seen, authorizes the executors, in certain contingencies, to make advances to the devisees on account of their prospective interests in the estate when they shall have attained the age of twenty-one years; and as it is manifest the executors could not so intelligently exercise the discretion with which they are clothed by the will in respect to such advances, without knowing the proportions in which they would be en-

titled to take, it is clearly important that the question should be now determined. Keeping in view what has already been said, a few words will suffice to present what we have to say on this subject.

It is conceded, and such is unquestionably the law, that if a testamentary gift be made to one person and the children of another person, as, for instance, to A and the children of B, A and the children of B, in such case, in the absence of anything to show a contrary intention, will take *per capita*, and not *per stirpes*. (2 Jarman on Wills, 756.) Yet it is equally well settled, that the opposite construction will prevail when the intention to that effect can be gathered from the context,—or, in the somewhat quaint language of Jarman, "this mode of construction will yield to a very faint glimpse of a different intention in the context." Id. 757.

The question for determination, then, is, what is there in the context to take the present case out of the general rule above stated, and which both parties fully recognize? After a very careful consideration of the various provisions of the will, we have been unable to discover anything which, in our judgment, affords even "a faint glimpse of an intention" on the part of the testator that the usual construction should be departed from in this case. Two facts are disclosed by the will which are supposed by counsel to afford such evidence, namely, first, that appellant is characterized in the will as *heir* of his deceased mother; and second, that the testator recognizes his rights and claims, as such, in the legacy to him of $30,000, and the giving of an equal amount to Mrs. Osburn, the sister of his deceased mother. These facts, particularly the last, are pressed with great earnestness. They will be considered together.

As to the first, we regard it as of no special significance, except that it is one, among others, which tends to show, as we have already seen, the testator, in disposing of his property, clearly had in mind the objects of his affections, both

living and dead, and their relations to one another, as well as to himself. Thus viewing them, the appellant was presented to him in the two-fold character of sole representative of his deceased daughter, and also as a grandchild. That he should have intended, as we believe he did, to recognize him, in the disposition of his estate, in both these characters, was, to say the least of it, but natural. Having a living daughter, she was to be provided for, and the testator was the proper one to determine the amount necessary for that purpose. This was done by giving her, in her own right, a valuable property, worth about $30,000. Mrs. McCartney, her deceased sister, though dead, was equally an object of the testator's affection, and the only way he could make her equal with the living daughter, and thereby give effect to what may be supposed the promptings of affection, was through the appellant, her son and only heir. How could this be done? Manifestly, in but one way,—that is, by giving to him an amount equal to that given to the living daughter,—the very thing that was done. The testator alone had the right to determine what would be a reasonable and proper provision for the living daughter, and for the appellant, as the sole representative of his deceased daughter. This he did, and we perceive no ground for questioning its liberality or sufficiency, even if we had the right to do so, which we have not. In all this we see nothing to justify a departure from the general rule requiring a *per capita* division of the estate. On the contrary, we think it affords additional reasons why the rule should be adhered to in this case. After having made this equal and liberal provision for the living daughter, and the heir and sole representative of the dead one, there was yet a large residuum of the estate to be disposed of. That, as we construe the will, he gave to such of his grandchildren, Harry McCartney included, as should be living at the time of distribution,—or, in other words, when the youngest child of Mrs. Osburn should attain the age of twenty-one years. Those of the grandchildren who are living

at that time, and take at all, will take as the will provides,—
share and share alike. As it is a gift or devise to take effect
at a future time, it follows that it will fail as to such of the
grandchildren who happen to die before that time.

For the reasons stated, the decree of the court below, except
in so far as it relates to the sixty-seven lots above mentioned,
is reversed, and the cause remanded, for further proceedings
in conformity with this opinion.

*Decree reversed in part and in part affirmed.*

Mr. JUSTICE MAGRUDER, having been of counsel in the court
below, took no part in the decision of this case.