JOHN D. TURNER, administrator with the will annexed, *vs.* CHARLES M. WILLIAMS, administrator.

Middlesex.    March 3, 1909. — June 22, 1909.

Present : KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Fraud. Death. Marriage and Divorce. Contract,* Implied in law. *Evidence,* Presumptions and burden of proof.

At the trial of an action by the administrator with the will annexed of the estate of a man against the administrator of the estate of a woman, for money alleged to have been had and received to the use of the estate of the plaintiff's testator by the defendant's intestate through fraud practised by her upon the plaintiff's testator in inducing him to marry her by falsely representing to him that she

was divorced from a previous husband, and, after such marriage, in inducing him to procure life insurance in her favor and to convey real estate to her, the proceeds of which she received after his death, it appeared that the first husband of the defendant's intestate left her four years before she married the plaintiff's testator, and a witness testified that fourteen years after such marriage he "knew from information from" the defendant's intestate that her first husband "was at Bridgeport, Connecticut." *Held*, that the question whether such first husband was living at the time of the second marriage was for the jury.

In an action by the administrator with the will annexed of the estate of a man against the administrator of the estate of a woman, for money alleged to have been had and received to the use of the estate of the plaintiff's testator by the defendant's intestate through fraud practised by her upon the plaintiff's testator in inducing him to marry her by falsely representing to him that she was divorced from a previous husband, and, after such marriage, in inducing him to procure life insurance in her favor and to convey real estate to her, the proceeds of which she received after his death, the burden of proving that the first husband was living and was not divorced from the defendant's intestate at the time of the second marriage rests upon the plaintiff throughout the trial.

At the trial of an action by the administrator with the will annexed of the estate of a man against the administrator of the estate of a woman, for money alleged to have been had and received to the use of the estate of the plaintiff's testator by the defendant's intestate through fraud practised by her upon the plaintiff's testator in inducing him to marry her by falsely representing to him that she was divorced from a previous husband, and, after such marriage, in inducing him to procure life insurance in her favor and to convey real estate to her, the proceeds of which she received after his death, there was evidence tending to show that the first husband was living at the time of the second marriage, that the defendant's intestate had resided continually in Middlesex County in this Commonwealth after her first husband left her and that the only divorce proceedings in that county in which any one of her name was a party was a libel which she had filed four years before her second marriage for a divorce from her first husband, and that the libel was dismissed a year before the second marriage. There was testimony, introduced without objection, that the plaintiff's testator during his life had said that the defendant's intestate "was a divorced woman and that she had told him she was a divorced woman." *Held*, that the question, whether at the time of the second marriage the defendant's intestate was married to her first husband, was for the jury.

Where, at the trial of an action a material question is whether one of the parties to a marriage was at the time of such marriage still married to another person, and evidence is introduced on both sides, the validity of the second marriage becomes a question of fact to be proved in the light of all the circumstances and of the reasonable inferences from them, and the presumption of innocence of the party alleged to have committed bigamy is not so much stronger than any other evidence or presumption as to compel the assumption of death or divorce in order to infer the existence of such innocence.

CONTRACT for money had and received by the defendant's intestate to the use of the estate of the plaintiff's testator, the declaration alleging that the defendant's intestate procured from the plaintiff's testator three life insurance policies from which

she received $8,500 on October 7 and 14, 1895, and also procured real estate from him from the sale of which she received $4,000 on July 18, 1899, and that she fraudulently concealed from the plaintiff's testator and his legal representatives the cause of action until within six years before the date of the writ. Writ dated January 16, 1906.

The case was tried before *King,* J. Besides the facts stated in the opinion, there was evidence tending to show that the defendant's intestate always had lived in Middlesex County, that the only libel for divorce in which a person of her name was a party was the one mentioned in the opinion; that, during the period when the plaintiff's testator and the defendant's intestate were living together as man and wife, i. e. from August 19, 1874, until September 19, 1895, he took out three life insurance policies payable to her as his wife, the proceeds of which, received by her after his death, and interest thereon made up six of the items of the declaration; and that on June 13, 1894, he deeded to her real estate which she sold after his death, the proceeds of which, with interest, made up the remaining items of the declaration.

Other facts are sufficiently stated in the opinion.

At the close of the plaintiff's evidence, the presiding judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*M. M. Johnson,* (*G. N. Merritt* with him,) for the plaintiff.

*J. J. Pickman,* for the defendant.

Rugg, J. This is an action of contract to recover money alleged to have been had and received to the use of the estate of the plaintiff's testator because obtained through the fraud of the defendant's intestate. The fraud claimed was that the defendant's intestate, under the name of Emma E. Ingalls, induced the plaintiff's testator, Joseph Turner, to marry her and settle property upon her by falsely representing herself to be a single woman. There was evidence tending to show that the defendant's intestate under the name of Emma E. Ingalls was from 1858 to 1870 the wife of Nelson N. Ingalls, living with him at Lowell in this Commonwealth; that in or before 1870 he had deserted her; that his place of residence was thereafter for some time unknown to her, and that at one time he had lived in New

Hampshire, but never afterwards in Lowell; that in 1870 she filed a libel for divorce against Ingalls, which was dismissed in 1873; that in 1874 she was married to Joseph Turner, having represented to him that she was a divorced woman, and lived with him in Lowell until his death on September 19, 1895. One Marsh testified that on September 5 or 6, 1888, he "knew from information from " the defendant's intestate that her first husband was at Bridgeport, Connecticut. " She said something about his being down there "; and that he thought he told the plaintiff " something about his step-mother's * telling me about Ingalls being in Bridgeport, and she asked me to inquire him out when I went there." There is no evidence that he was ever heard from after that date. In the Superior Court a verdict was directed for the defendant.

The point at issue as the case was tried was whether the defendant's intestate, at the time of her marriage with the plaintiff's testator, was capable of entering into a valid marriage. The decision hinged upon the question whether at that time her former husband was living and undivorced. This was a fact to be determined upon all the evidence.

Plainly there was sufficient evidence to support a finding that he was then alive. He was living in 1870, three years before, and there was the testimony of the witness Marsh to the effect that he received information from the defendant's intestate in 1888 that her first husband was then living in Connecticut. In view of this evidence it was error for the court to rule as matter of law that her first husband was not living in 1874 at the time of the second marriage of the defendant's intestate.

It is said in the exceptions that the plaintiff's testator, before the marriage now questioned, " stated to his children, and others, that said Emma was a divorced woman and that she had told him she was a divorced woman." This appears to have been admitted without objection, and, being then in, was entitled to its natural probative force. Assuming that this evidence was admitted under R. L. c. 175, § 66, as having been made in good faith upon the personal knowledge of the declarant, the direction of a verdict for the defendant was not warranted. The

---

\* The plaintiff was a son of Joseph Turner.

question to be decided was whether the prior marriage of the defendant's intestate was dissolved at the time of her marriage with the plaintiff's testator. Proof that it was valid and subsisting was the burden assumed by the plaintiff, and this burden rested on him throughout the trial. Although there was oral testimony to the effect that this marital relation had been dissolved by divorce, it was nevertheless open to the plaintiff to argue that the statements to this effect were made by interested persons, who were mistaken, discredited, unreliable, deceived or deliberately attempting to deceive, and therefore not entitled to belief.

It is urged in support of the ruling, that the law has such a tender regard for solemnized marriage and for the assumption of innocence as to presume strongly that all apparent obstacles were removed so that its validity may be established. It has often been decided or intimated by way of dictum that death or divorce of one of the parties to a prior marriage will be presumed in order to support such a second one.* This train of cases appears to have had its origin in *The King* v. *Twyning*, 2 B. & Ald. 386, which "has been much misunderstood" as is pointed out in *Lapsley* v. *Grierson*, 1 H. L. Cas. 498, 505, where it is explained. Where there is no extrinsic evidence either way, the legality of a marriage, like sanity, continuance of life, and regularity of acts of public officers, will be assumed. But where it is attacked and evidence is introduced tending to impeach it, then a question of fact arises to be proved in the light of all the circumstances and the reasonable inferences from them. The presumption of innocence is not so much stronger than any other as to compel the assumption of death or divorce in order to infer its existence. The unsoundness of such a contention becomes apparent when applied baldly to every conceivable state of facts. A marriage could not be ruled as a

* *Potter* v. *Clapp*, 203 Ill. 592, 600. *Hunter* v. *Hunter*, 111 Cal. 261. *Cash* v. *Cash*, 67 Ark. 278. *Hadley* v. *Rash*, 21 Mont. 170. *Alabama & Vicksburg Railway* v. *Beardsley*, 79 Miss. 417, 424. *Scott* v. *Scott*, 77 S. W. Rep. 1122. *Montgomery* v. *Bevans*, 1 Sawyer, 653, 666. *Erwin* v. *English*, 61 Conn. 502, 510. *Lockhart* v. *White*, 18 Texas, 102. *Carroll* v. *Carroll*, 20 Texas, 731, 742. *Smith* v. *Knowlton*, 11 N. H. 191, 196. *Greensborough* v. *Underhill*, 12 Vt. 604. *Palmer* v. *Palmer*, 162 N. Y. 130.

matter of law to be valid by reason of the presumption of innocence, if other evidence showed that a month or a day before its solemnization one of the parties was living with a legal and youthful spouse of good health and non-dangerous employment. The law jealously regards the marriage relation and makes reasonable assumptions in its favor, but it has no special regard for second in preference to first marriage. The burden of proof in the absence of conflicting evidence may sometimes determine the result. The state of health, age, occupation or prospective journey of a given individual may warrant the inference of death within a brief time. But ordinarily whether one is alive on any given date, within the period of seven years of unexplained absence, is a fact to be determined upon all the probabilities arising in a particular case. Circumstances may exist, which would make reasonable the inference of a divorce. But there is no inflexible rule by which it can be invoked to protect subsequent nuptials. There is no absolute presumption of innocence, which will of itself prove the validity of a subsequent marriage in preference to the continuance of a former one. The validity or invalidity of the marriage drawn in question must be established, by the party upon whom the burden of proof is cast, upon all the facts with the reasonable inferences flowing from them. The law marks no particular consideration as of prevailing consequence in all cases. There is no " sacramental force " in the presumption of innocence over the presumption of the continuance of life or any other status in its nature likely to endure. Presumptions are rules of convenience based upon experience or public policy, and established to facilitate the ascertainment of truth in the trials of causes. There are a few instances of conclusive presumptions ; but, where there are conflicting presumptions, one is not as matter of law stronger or weaker than another. The whole case then is thrown open to be decided as a fact upon all the evidence. It is for the sound judgment of the jury to weigh all the circumstances, including the characters of the persons involved and the probability of different lines of conduct, and determine where the truth lies as a matter of common sense unfettered by any arbitrary rule. *Hyde Park* v. *Canton,* 130 Mass. 505. *Commonwealth* v. *McGrath,* 140 Mass. 296, 299. *State* v. *Plym,* 43 Minn. 385. *Reynolds* v. *State,*

58 Neb. 49, 52. *Williams* v. *Williams*, 63 Wis. 58. *Casley* v. *Mitchell*, 121 Iowa, 96. *Northfield* v. *Plymouth*, 20 Vt. 582, 590. *Lapsley* v. *Grierson*, 1 H. L. Cas. 498. *Regina* v. *Willshire*, 6 Q. B. D. 366, 370. *The King* v. *Harborne*, 2 Ad. & El. 540. *Regina* v. *Lumley*, L. R. 1 Cr. C. 196.

Inasmuch as Nelson N. Ingalls was absent and unheard of for more than seven years after the time to which the testimony of Marsh referred before the death of the plaintiff's testator, so that the presumption of his death would arise, it would seem that the marriage here questioned might be upheld under R. L. c. 151, § 6, as having been entered into with good faith by Joseph Turner and followed by continued cohabitation after the removal of the impediment. This is a fact dependent upon evidence, and could not have been ruled as a matter of law. The effect of this circumstance, as well as the right which in any event the plaintiff may have in the proceeds of the insurance policies, are not before us.

*Exceptions sustained.*