# FROSCH *v.* MONDAY.

DEEDS, CONSTRUCTION OF; TRUSTS; CONTINGENT REMAINDERS; EQUITY.

1. In construing a deed in the nature of an executory trust, it is the duty of the court to ascertain the intent of the grantor, and to give force and effect to such intent when not repugnant to any rule of law.

2. While, in construing a deed in the nature of a testamentary disposition of the property of the grantor, the grantor's intention, gleaned from the instrument itself and the conditions existing at the time of its execution, will control in the determination of its legal effect, and the same rules of construction will be applied as in cases of devises, consideration will be given to the fact that the legal effect of the instrument is very different from that of a will, in that the deed is irrevocable and the title passes to the property conveyed immediately upon its execution.

3. Where a deed in the nature of a testamentary disposition by the grantor of his property provides that, in certain contingencies, the property shall go to his "surviving children," and at the time he has a wife living, those words will not be considered to include children by a subsequent wife, especially where it appears that thereafter the grantor, by a similar deed, made provision for the latter children.

4. Where a contingent remainder arises under the provisions of a deed in the nature of a testamentary disposition by the grantor of his property, to be apportioned among a designated class of persons on the happening of a certain event, such as the death of the grantor, the remainder vests in the class until the happening of the event, but not in the independent members of the class, and only the members of the class surviving at the happening of the event will take.

5. The word "children" in a deed in the nature of a testamentary disposition of the grantor's property cannot be made to include grandchildren, unless there is something in the instrument showing such intention.

6. Where the grantor in a deed of trust in the nature of a testamentary disposition of his property, who had five children,—William, John, Catherine, George, and Barbara,—and who had made separate provision for William and John, after reserving to himself in the deed

a life estate in the property conveyed, and directing that a trustee should hold a specified part of the property for the benefit of Catherine, George, and Barbara, for life, with remainder over to their children, provided that in the event of the death without issue of any one of such three children, his or her share should be sold by the trustee after the grantor's death, and the proceeds paid over "to the surviving children" of the grantor, and, before the grantor's death, George died, leaving no children, and John and Barbara died leaving children, it was *held* that on the grantor's death the share of George was distributable equally between the survivors, Catherine and William.

No. 2002.   Submitted October 21, 1909.   Decided January 17, 1910.

HEARING on an appeal by the complainant and certain of the defendants from a decree of the Supreme Court of the District of Columbia, sitting as an equity court in a suit for the construction of a deed in trust.                    *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from the decision of the supreme court of the District of Columbia involving the construction of a deed of trust given by John Walter, Sr., on June 18, 1869, whereby certain real estate in the District of Columbia and certain securities for moneys due him were conveyed to John Walter, Jr., in trust for the grantor for life, and at his death to be conveyed in separate parcels to three of his children or their heirs.

The grantor, John Walter, Sr., was married four times. By his first wife, he had five children; namely, the appellants, Catherine M. S. Frosch and William Walter, and John Walter, Jr., George N. Walter, and Barbara Walter King. His second wife was a widow who, at the time of their said marriage, had three children by a former husband. There was no issue born of the second marriage. On the death of his second wife, he married again, and, by his third wife, he had four children, the appellants Oscar Walter, Adolph Walter, Hugo Walter, and Pauline Crow. On the death of his third wife, he married

again, and from his fourth wife he obtained subsequently a decree of absolute divorce. No children were born of this marriage. At the time the deed of trust in question was made, the grantor was living with his second wife, and had living at that time the five children of his first marriage. The two children John Walter, Jr., and William Walter were each over twenty-one years of age at the date of the execution of this deed.

It appears that on June 18, 1869, John Walter, Sr., was possessed of a large amount of real estate in the city of Washington, District of Columbia, as well as certain securities. He seems to have had an interest in lots 5 and 6, in square 323, this city, which had been before this time conveyed by one Joseph Nathan to William Walter, son of John Walter, Sr., and also in lot 8 and part of lot 9, in square 377, which had been, prior to this date, conveyed by one John W. Nairn to the sons William Walter and John Walter, Jr., jointly. On the above date, John Walter, Sr., made a division of his estate, or at least of a portion of it, among his five children. He required his son William to convey to him his interest in lots 5 and 6, square 323, for the nominal consideration of $1. He required his son, John Walter, Jr., to convey his interest in lot 8 and part of lot 9, square 377, to his son William Walter, this constituting the portion intended for William. He then conveyed to his son John Walter, Jr., "in consideration of natural love and affection and the sum of $10,000," lot 10, square 347, on F street, in this city, as his portion. These conveyances were in fee simple.

He then executed the deed of trust in question, the purpose of which is expressed therein as follows: "Whereas the said John Walter, Sr., of the first part, is the owner of certain real estate in the city of Washington, and certain credits, some of which are secured by deed of trust on real estate in said city. And whereas said party of the first part, from considerations of blood and natural affection, is desirous, of making provision for his children by his first wife, to wit, Catherine Magdalena Sophia Walter, George N. Walter, and Mrs. Barbara King. Now, Therefore," etc.

In this deed, he conveys to the trustee certain described real estate and securities to be held by the trustee, subject to the declaration of trusts therein made. The material features of the trust were that the trustee should pay over to the grantor "the rents, issues, and profits" of the entire trust estate "for and during the term of his natural life;" that, out of the rents and profits of the estate, he should pay three fourths of the cost of certain improvements then being made on the property conveyed to his son John Walter, Jr., and, in the event the improvements were not completed during the lifetime of the grantor, the residue of the cost thereof should be paid out of the property conveyed to his son William Walter. He also instructed the trustee to pay to his present wife out of the rents and profits of the trust estate $2,000, in case she survived him, for the benefit of his stepchildren, her children by a former husband, and, in the event she did not survive him, then the trustee, at the death of the grantor, should pay this sum to the stepchildren direct.

He then, by way of making definite provision for the three children Catherine, George, and Barbara, and their respective children, directed that upon his, the grantor's, death, the trustees should hold a certain described portion of the trust estate in trust to pay to his daughter Catherine for her life "the rents, issues, and profits" thereof, and, in the event of her death, to hold the same for her children in fee. The trustee was directed to hold, upon like trusts and conditions, another described portion of the trust estate for the benefit of his daughter Barbara and her children, and the remaining portion of the trust estate in like manner for the benefit of his son George and his children.

Then follows the provision of the deed, the construction of which is here sought: "That in the event of the death of any one of the above-mentioned children of the said John Walter, Sr., to wit, Catherine, George, and Barbara, without leaving any child or children or any issue of any child or children, then and in that case that the property held in trust by said trustee, party of the second part, for the benefit of the party then dying without issue, shall be sold by said party of the second part, after the death of John Walter, Sr., and the proceeds paid over in

equal portions to the surviving children of the said John Wal-
ter, Sr., party of the first part." All of the above conveyances
were executed simultaneously on June 18, 1869, as a part of
the general plan of John Walter, Sr., to make provision for his
children.

It further appears that on the 18th day of August, 1900,
John Walter, Sr., made a second division of the real estate of
which he was then possessed, and which was not included in the
former division, among the four children by his third wife, con-
veying to each portions of the said real estate for a nominal con-
sideration in fee-simple absolute, with a reservation therein of
a life estate, as follows: "That the said party of the first part
does hereby expressly reserve unto himself, for and during the
period of his natural life, a life interest in and to the land and
premises herein described, and all the rents, issues, and profits
thereof, to have and apply for his sole use and benefit." Thus
it appears that, as to the children of the third wife, provision was
made by the father in this separate and independent division of
a portion of his property.

George N. Walter died unmarried and without issue on May
14, 1892. Thereafter, Barbara, who had married Albert King,
died August 23, 1904, leaving surviving her, eight children, who
were made defendants in this action. John Walter, Jr., died on
November 17, 1906, leaving two children, Henry C. Walter and
Frederick L. Walter, also defendants in this suit. On April 12,
1907, the grantor, John Walter, Sr., died, leaving surviving him
William and Catherine, children by his first wife, and Pauline,
Hugo, Oscar, and Adolph, children by his third wife.

This suit involves the distribution of the proceeds of the por-
tion conveyed by the deed of trust to George N. Walter, who
died without issue May 14, 1892. The bill alleges that it was
the intention of the grantor by the deed of trust to provide ex-
clusively therein for Catherine, Barbara, and George. The
prayers of the bill are in the alternative: First, that if the
court should find that the complainant, Catherine M. S. Frosch,
is entitled to all the proceeds of the sale of the portion of George
N. Walter, then that the trustee be decreed to convey the property

in fee simple to her after full payment of $2,000 charged on all the trust estate for the benefit of the stepchildren of John Walter, Sr., the children of the second wife by her former marriage; and second, if the court should find that the complainant and her brother William Walter are entitled to equal shares in said property, then that the trustee be directed to sell the property and divide the proceeds after full payment of the $2,000 aforesaid. The children of Barbara answer, claiming that they should have one half of the said property. William Walter answers, claiming one half of the property. The children of John Walter, Jr., claim the share that they insist would belong to their father if living at the date of the death of the grantor. The children of the third wife of the grantor answer, claiming that they should be included as surviving children in the distribution of the proceeds of the sale of this property.

The questions presented are: First, whether the complainant, as the sole survivor of the three children provided for in the deed of trust, shall receive the portion which was to go to George N. Walter; second, whether her full brother, William Walter, shall share therein; third, whether the half brothers and sisters by the third wife of the grantor shall share therein; fourth, whether the eight children of Mrs. King shall be entitled to share therein, standing in the place of their mother; and, fifth, whether the two children of John Walter, Jr., shall be entitled to share therein, representing the interest of their father. In other words, does the said clause, "surviving children of the said John Walter, Sr.," include all the children surviving at the death of George N. Walter; or does it mean all the children surviving at the death of John Walter, Sr.; or does it mean only the children by the first wife so surviving; or does it mean the two children Barbara and Catherine, the survivors of George N., included in the deed of trust; or does it mean only the complainant as the sole survivor of the three named as beneficiaries in the deed of trust at the time of the death of John Walter, Sr.?

The court below decreed, "that the complainant, Catherine M. S. Frosch, and the defendants, Ida S. Monday, Emma A. Schwab, William A. King, J. Harry King, Margaret Collins,

Caroline M. King, Eva A. King, and Mabel D. King, as the children and heirs at law of Barbara King, deceased, are entitled to the whole of said proceeds, in the proportion of one half thereof to the said complainant, and of one half thereof, in equal shares, to the said defendants, the children and heirs aforesaid; and that the said proceeds shall be divided among them, the said complainant and the said defendants, accordingly." The decree then directed the trustee to sell the property in question and divide the proceeds thereof, one half to Catherine, and the remainder equally between the eight children of Barbara.

The case comes here on appeal from the decree by the complainant, Catherine Frosch, who claims the entire fund, and by all of the defendants below, except Henry W. Sohon, trustee, and the children of Barbara King.

*Mr. Benjamin F. Leighton, Mr. Ralph P. Barnard,* and *Mr. Guy H. Johnson* for the appellant Catherine M. S. Frosch.

*Mr. Andrew A. Lipscomb* for the appellant William Walter.

*Mr. M. J. Colbert, Mr. George E. Hamilton, Mr. John W. Yerkes,* and *Mr. John J. Hamilton,* for the appellants Oscar Walter, Adolph Walter, Hugo Walter, and Pauline Crow.

*Mr. O. S. Metzerott, Mr. James B. Archer, Jr.,* and *Mr. John Lewis Smith* for the appellants Henry C. and Frederick L. Walter.

*Mr. Hugh T. Taggart* for the appellees.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

The deed here in question is in the nature of an executory trust. In construing such an instrument, it is the duty of the court to ascertain the intent of the grantor, and to give force and effect to such intent when not repugnant to any rule of law. This being a deed, "the construction must be upon the view and

comparison of the whole instrument and with an endeavor to give every part of it meaning and effect." *Jackson ex dem. Ludlow* v. *Myers,* 3 Johns. 388, 395, 3 Am. Dec. 504. The deed before us calls for the application of the same rules of construction which are employed generally by courts of equity in construing written instruments   As said by the court in *Walsh* v. *Hill,* 38 Cal. 481: "In the construction of written instruments, we have never derived much aid from the technical rules of the books. The one rule of much value—one which is frequently shadowed forth, but seldom, if ever, expressly stated in the books—is to place ourselves as near as possible in the seats which were occupied by the parties at the time the instrument was executed; then, taking it by its four corners, read it."

This conveyance, taken in connection with the others made at the same time, making provision for the children of the grantor then living, were in the nature of a testamentary disposition of his property. The intention of the grantor, therefore, gleaned from the instrument itself and the conditions existing at the time of its execution, must control in the determination of its legal effect. While in a deed of this nature the legal effect of its execution is different from that of a will, the same rules of construction, however, must be applied to it as in the case of devises. As was said in *Ware* v. *Richardson,* 3 Md. 505, 553, 56 Am. Dec. 762: "It has been urged that more strictness is required in construing deeds than wills, and that, as this is a deed, the technical rules of construction should apply, with unbending force. To this proposition we do not assent. 1 Cruise, Real Prop. 459, says that the same mode of construction is adopted in cases of deeds as in cases of devises, in questions like the present."

We think that the legal effect, however, of a deed, such as the one before us, is very different from that of a will. It deals with the present; is irrevocable and final. The title to property conveyed passes immediately from the grantor, and his control over it is gone; while a will deals with the future, subject to revocation at any time, and the conveyance of the title does not becomes effective during the lifetime of the testator. In the one

instance, the rights of the grantees or beneficiaries are determined at the time of the execution of the instrument; in the other case, the rights are determined as they are found to exist at the death of the testator. The deed cannot be changed to meet contingencies that could not reasonably have been contemplated or foreseen by the grantor at the time of its execution; while the will may be changed at any time to accommodate the wishes of the testator to the changing conditions of life. Many circumstances may have impelled him to change his will, such as the death of his wife and a subsequent marriage, the death of children or other relatives, and numerous other contingencies which, at the time of the original execution of the instrument, cannot, in reason, be held to have been within the contemplation of the maker.

Looking carefully at the language of the deed, and keeping in mind the conditions existing on June 18, 1869, when, by the several conveyances of that date, the grantor was impelled to part with his property to make provision for his children, we will consider, first, the rights of the children of John Walter, Sr., by his third wife to partake in the division of the property in question.

The words, "surviving children," must be construed with reference to the persons sustaining that relation at the date of the execution of the deed of trust. Certainly, the remotest contemplation he could be charged with having in mind would be the possible issue by his present wife. A reasonable construction of the deed will not support the assumption that he contemplated a future marriage with issue. No reason is apparent why he should have had in mind future contingencies beyond such as might possibly arise in connection with those for whom he was then making provision. It would be inconsistent with the whole tenor and object of the deed to hold that the grantor intended to include children of a marriage in the future, which could not at this time have been contemplated. If such had been his design, it is fair to assume that the deed would have contained some intimation of that intention. It is unnecessary for us to intimate what would be, in our judgment, the proper construction to

place upon these words were they used in a will. Being a deed, the property conveyed immediately passed beyond the control of the grantor. It is more reasonable, therefore, to hold that he referred only to the children then living and for which he was making provision.

This fact is emphasized by the action of the grantor in 1900, when he divided among the children by his third wife other real estate of which he was then possessed, simultaneously conveying to each his respective portion in fee simple for a nominal consideration, reserving to himself, however, as in the former division, a life estate therein. On this date, he was making a second division and disposition of his property for the benefit of his children. No mention is made at this time of the previous objects of his bounty. His provision for the children of his third wife seems to have been regarded by him as a separate transaction, entirely independent of the division he had made thirty-one years before. At this time, George N. Walter had been dead for more than eight years. It was known to the grantor and his children that the portion awarded to him was being held subject to division, upon the death of the father, under the terms of the deed of trust, yet no reference was made at this time either to the former division or the contingency that had arisen under it. With this state of facts, we have no difficulty in holding that the children of John Walter, Sr., by his third wife, are not entitled to partake in the distribution of the fund here in controversy.

We will next consider a more difficult branch of the case, namely, the rights of the children of Barbara King to take the portion claimed to belong to their mother as a survivor of George N. Walter. It is essential to this inquiry to determine when the conversion of the interest of George N. Walter took place. It is clear that the interest of the parties in remainder could not become vested until the happening of this event. By an express provision of the deed, the real estate apportioned to George N. Walter had to be sold and the proceeds divided between the surviving children of John Walter, Sr., at his death. Hence, the conversion could not take place until the death of the father.

In other words, the event which should happen before there could be a conversion was the death of John Walter, Sr. It matters not that the interest of George N. Walter has not yet been sold. The equitable conversion of the real estate into personalty to create the interests in remainder took place on the death of the grantor, the time fixed in the deed of trust for this event.

The rule of equitable conversion is well settled. Pomeroy in his work on Equity Jurisprudence, 3d ed. vol. 3, § 1162, discussing the time from which conversion takes effect, says: "This, like all other questions of intention, must ultimately depend upon the provisions of the particular instrument. The instrument might in express terms contain an absolute direction to sell or to purchase at some specified future time; and if it created a trust to sell upon the happening of a specified event, which might or might not happen, then the conversion would only take place from the time of the happening of that event, but would take place when the event happened exactly as though there had been an absolute direction to sell at that time." In the case of *Re Walkerly,* 108 Cal. 627, 652, 49 Am. St. Rep. 97, 41 Pac. 772, the court said: "The rule of equitable conversion merely amounts to this, that when there is a mandate to sell at a future time, equity, upon the principle of regarding that done which ought to be done, will, for certain purposes and in aid of justice, consider the conversion as affected at the time when the sale ought to take place, whether the land be then really sold or not. But whenever the direction is for a future sale, up to the time fixed, the land is governed by the law of real estate." To the same effect are *Ward* v. *Arch,* 15 Sim. 389; *Moncrief* v. *Ross,* 50 N. Y. 431; *McClure's Appeal,* 72 Pa. 414; *Bank of Ukiah* v. *Rice,* 143 Cal. 265, 101 Am. St. Rep. 118, 76 Pac. 1020.

Concluding, as we must, that the portion of George N. Walter could not be converted for the purpose of distribution until the death of his father, it became, under the terms of the trust, at the death of George a mere contingent remainder, which could not vest during the life of John Walter, Sr. The mere possibility of any portion of it ripening into a vested estate depended upon the contingency of each member of the class to which it

should descend, the surviving children of John Walter, Sr., at the time of his death, being in existence at that time. There was an estate to which the class was entitled and which vested in the class at the death of George N. Walter, but the personnel of that class could not be ascertained until the death of the father. Where a contingent remainder arises under the provisions of an instrument, such as the one before us, to be apportioned among a designated class of persons on the happening of a certain event,—in this instance the death of the grantor,—it is well settled that the remainder vests in the class until the happening of the event, and not in the independent members of the class. The reason is apparent; since the class consists of the membership constituting it when the event happens. The existence of the individual members cannot be ascertained prior to that time.

That a remainder of this sort vests in the class pending the happening of the event when it shall finally be apportioned according to the terms of the trust is well settled. In *Satterfield v. Mayes,* 11 Humph. 58, answering the query whether such a remainder vests during the life tenancy, the court said: "It vests in the described class, as a class, and not individually in the persons composing such a class, and the entire subject of the gift survives to, and vests in, the persons constituting such class at the period when payment or distribution of the fund is to be made." Referring to this definition, the same court said, in *Nichols v. Guthrie,* 109 Tenn. 535, 73 S. W. 107: "The correctness of the answer thus given is essential to the class doctrine. For if the remainder, during the continuance of the particular estate, vested in the individual members of the class, the interests so vested would be transmissible, as in any other vested remainder, and thus would destroy or abrogate this doctrine altogether."

In *Richey v. Johnson,* 30 Ohio St. 288, the testator willed his farm to his executors in trust, to be managed by them until his debts were paid, and then for the benefit of his wife during her life. At the death of the wife, the land was to be sold and the proceeds divided among certain heirs. The court, holding

that conversion did not take place until the determination of the life estate on the death of the wife, said: "The thing to be distributed was money, not land. The conversion was necessarily to precede the distribution; and the gift is therefore to be regarded as a bequest of personalty, and not as a devise of land. It makes no difference that the fund to be distributed is the proceeds of that which was land at the date of the will; or at the testator's death. The bequest is nevertheless a legacy, and when vested in interest in the legatee, whatever may be the time for its payment, the law of succession in respect to it is to be found in the statute, not of descent, but of distribution. A court of equity will regard the subject-matter as having the new character which the testator has impressed upon it by an unconditional order for its conversion. The courts of England uniformly act upon this doctrine, and the same rule obtains in most of the states of this country, and has been frequently recognized in this state." To the same effect is the case of *McClain* v. *Capper,* 98 Iowa, 145, 67 N. W. 102, where it was held that under a devise providing that, "when my youngest child arrives at full age, I desire that the real estate be equally divided among my children, their heirs, or survivors of them," the children took no vested interest until the youngest child became of age. It was also held that the clause in the will, like the one in the deed before us, contained no words of gift or grant, except the direction for a division. The contingency in that case was held to be annexed to the gift itself, and not to the time of the division.

We think that, by the terms of the trust, the conversion of the interest of the deceased son, George N. Walter, took place at his father's death; that the interest of George vested in the children of John Walter, Sr., surviving at the time of his death as a class, the membership of which should consist of the children in existence at that time, and that the right of a legatee within that class to take under the trust depended upon his being alive at the time fixed for the division and payment. *Thompson* v. *Ludington,* 104 Mass. 193; *McCartney* v. *Osburn,* 118 Ill. 403, 9 N. E. 210; *Reilly* v. *Bristow,* 105 Md. 326, 66 Atl. 262; *Boston Safe Deposit & T. Co.* v. *Blanchard,* 196 Mass. 35, 81 N.

E. 654; *Storrs* v. *Burgess,* 101 Me. 26, 62 Atl. 730; *Webber* v. *Jones,* 94 Me. 429, 47 Atl. 903.

We are therefore clearly of the opinion that the individual interests did not vest upon the death of George N. Walter, but upon the death of John Walter, Sr., because of the express declaration in the deed of trust that the corpus of the portion of any one of his three children, specially provided for in the trust estate, who should die without issue, should go to such of his children as were surviving at the time of the termination of the life estate. In other words, it was a bequest in the nature of a direction to divide the proceeds of certain property at a specified time, and to distribute it among certain described persons, to vest in those *in esse* answering the description at the appointed time. At the appointed time for the conversion and division of the share of the deceased son, George, the daughter Barbara was not in existence, and could not answer the description required to entitle her to become possessed of a portion or to partake in the distribution.

The word "children," when used in a deed or will, has in law a well-defined meaning. It refers to the immediate descendants in the first degree of the person named as ancestor, unless there is something in the language of the instrument itself indicating a contrary intent. In the case of *Adams* v. *Law,* 17 How. 417, 15 L. ed. 149, appealed from the circuit court of the District of Columbia, the court, considering the phrase, "departed this life in the lifetime of said Thomas Law, leaving issue of said marriage, one or more children then living," said: "Does this description include grandchildren? We think it does not. The word 'issue' is a general term, which, if not qualified or explained, may be construed to include grandchildren as well as children. But the legal construction of the word 'children' accords with its popular signification, namely, as designating the immediate offspring. See Jarman, Wills, 51. It is true, in the construction of wills, where greater latitude is allowed, in order to effect the obvious intention of the testator, grandchildren have been allowed to take under a devise 'to my surviving children.' But even in a will, this word will not be construed to mean

grandchildren, unless a strong case of intention or necessary implication requires it.   Hence it is decided that a power of appointment to children will not authorize an appointment to grandchildren.  *Robinson* v. *Hardcastle,* 2 Bro. Ch. 344; 4 Kent, Com. 345.  In Reeves v. Brymer, it is said, by Lord Alvanley, that 'children may mean grandchildren when there can be no other construction, but not otherwise." 4 Ves. Jr. 697. * * * Hence, in the construction both of wills and deeds, where the instrument has not, so carefully as in the present case, limited the word 'issue' to children. living, etc., but where the term is used without qualification, and is in another part of the same instrument supplied by the word 'child,' or 'children,' as a synonym, the courts have uniformly restrained its signification to children."  In *Cromer* v. *Pinckney,* 3 Barb. Ch. 466, the following definition appears:  "Thus the word 'children,' in its primary and ordinary sense, means the immediate legitimate descendants of the person named.  And where there is nothing to show that the testator intended to use it in a different sense, it will not be held to include illegitimate offspring, stepchildren, children by marriage only, grandchildren, or more remote descendants.  (*Radcliffe* v. *Buckley,* 10 Ves. Jr. 195; *Oxford* v. *Churchill,* 3 Ves. & B. 69; *Izard* v. *Izard,* 2 Desauss. Eq. 309; *Gardner* v. *Heyer,* 2 Paige, 11; *Hussey* v. *Berkeley,* 2 Eden, 194.)"

The rule, therefore, is well established that the word "children" cannot be made to include grandchildren, unless there is something in the instrument showing such an intention.   In the deed of trust before us, we find no such intention expressed. On the contrary, the grantor provides specifically that the issue of each of his children to whom property was apportioned in trust should inherit the portion of the parent.   Besides, as to the division of the portion here in question, the grantor used the words, "the surviving children of the said John Walter, Sr." Barbara King was one of the children provided for in the trust. Her portion as therein provided has descended to her children. Manifestly, after such a specific designation in the instrument itself, it cannot be contended that they should be included in

the term "surviving children," as used by the grantor in the connection here under consideration.

In this view of the case, we hold that the children of Barbara King are not entitled to partake in the distribution of the proceeds of the portion of George N. Walter. For the same reason, the children of John Walter, Jr., are also excluded.

We now come to the question of the right of William Walter to participate in this distribution. Here again, as in determining the rights of the children of John Walter, Sr., by his third wife, we are relegated, without the benefit of precedent, except as to the rules of construction, to a reasonable interpretation of the instrument itself. Does the clause under consideration relate solely to the three children specifically provided for in the deed of trust? We think that the statement of the purpose the grantor had in mind in executing the deed, that the "said party of the first part, from considerations of blood and natural affection, is desirous of making provision for his children by his first wife, to wit, Catherine Magdalena Sophia Walter, George N. Walter, and Mrs. Barbara King," does not necessarily govern the disposition he desired made of the portion of one of the beneficiaries of the trust created, should such a one die without issue.

We must, as nearly as possible, put ourselves in the position of John Walter, Sr., on June 18, 1869, when, to provide for his children then living, the various transactions of that date looking to this common end were had. In the deed of trust, he does not exclusively treat of the portions assigned to the three children for whom the trust estate was created, but he also considers the portions conveyed in fee to John Walter, Jr., and William Walter. He provides in the deed of trust for the equalization of each in these interests to correspond with the interest of each of the others. Beginning with the habendum clause of the deed, it treats of the respective shares of each of the five children, as follows: "To have and to hold the same unto and to the use of the said John Walter, Jr., party of the second part, his heirs, and assigns forever. In trust, nevertheless, for the uses and purposes following and none others, that is to say,

Vol. XXXIV.—23.

first, that the said party of the second part shall pay over all the rents, issues, and profits of the above-described pieces of property to the said John Walter, Sr., party of the first part, for and during the term of his natural life. And in case the said John Walter, Sr., shall die before the completion of the improvements now being made on the pieces of property situated in Washington city, on F street, between Tenth and Eleventh streets west, which property has been made over by deed of even date herewith to John Walter, Jr., by the said John Walter, Sr., his father, as a provision for the said John Walter, Jr., then on the further trust that the said party of the second part shall, in a reasonable time after the decease of the said John Walter, Sr., raise from the rents, issues, and profits of the hereinbefore described pieces of property, a sum of money equal to three fourths (¾) of the amount that shall be necessary to complete the improvements on the said property on F street, in a manner now contemplated to complete said improvements, which sum shall be applied to that purpose by said party of the second part, provisions having been otherwise made for raising the other one fourth (¼) of the amount necessary to complete said improvements, in that event, from the rents and profits of the estate deeded to William Walter and John Walter, Jr., by J. W. Nairn by deed bearing date November 18, 1867, as a provision for said William Walter. And secondly, that the said party of the second part shall pay out of the rents, issues, and profits of the above-described pieces of property, within one year after the demise of the said party of the first part, the sum of $2,000 to his present wife, Catherine Walter, if she survives the said John Walter, Sr., party of the first part, for the use of her children by her first husband, and if she does not survive the said party, then the said $2,000 shall be paid to and be divided equally between her said children."

Then follows the creation of the trusts for each of the three children specially named in the deed. He then sets aside the $10,000 bond received from John Walter, Jr., as part consideration for the property deeded him in fee, as a part of the portion to be held in trust for the benefit of Catherine, his daughter.

Disposing of other securities, the deed provides: "Witnesseth that the said John Walter, Sr., of the first part, in order more fully to equalize the division of his property, among his children, hereby assigns and transfers said notes for about $7,300, and the deed securing their payment to John Walter, Jr., in trust * * * to pay over the rents and profits and issues of the same to John Walter, Sr., for and during his natural life, and, after his decease, to pay over the rents, issues, and profits of the same to Mrs. Barbara King, aforesaid, for and during her natural life, and from and after her decease to hold the same for the use of all and every the children of the said Barbara King in fee and their heirs forever." Thus it will be observed that the father, John Walter, Sr., on June 18, 1869, was making a general testamentary division and disposition of his property among his five children.

The learned justice in the court below, in treating of this branch of the case in his opinion, after discussing the effect of the words "surviving children" as used in the deed, said: "Neither would it be natural for him to contemplate the two older children, John and William, who had received their portion of his estate by way of advancement, by deeds absolute; and he must therefore have had in mind only these three younger children by his first marriage when he said that the proceeds of the sale of the portion which would otherwise have gone to one of them or his issue had he lived, should be paid over in equal portions to the surviving children of the said John Walter, Sr. He meant the same by these words as if he had used the one word 'survivors'. In other words, it seems to me that what the grantor intended to do was to have such portion of his real estate sold, after his death, and the proceeds paid over in equal portions to the two surviving children, who were cobeneficiaries of the deceased child under the said deed; and if the scrivener had used the word 'said' before the word 'surviving,' there would probably have been no occasion for construing this document. It is useless to speculate as to how or why that word was omitted; but, taking into consideration the circumstances of the grantor, and of his two older chilren at that time, the conclusion seems reasonably certain

that he only intended that the two surviving children of these three should, in the contingency named, be vested with the title that would otherwise have gone to the deceased child or his issue."

The insertion of the word "said" before the words "surviving children," we think, is wholly unwarranted. It injects into the instrument a meaning which, in its absence, the document will not admit of, either by a strict interpretation of its terms or by the circumstances attending its execution. We think the more reasonable rule to be applied is that John Walter, Sr., apportioned the property described in the various instruments of June 18, 1869, among his children, equalizing the portions as nearly as possible. That the equalization took place at that time is apparent; in fact, the language of the deed of trust shows it to have been the determining thought in the mind of the grantor. No reason exists, and none can be gathered from the terms of the instrument itself, why the grantor should defer the equalization of the shares of the respective children until one of the three provided for in the trust estate should die without issue. It is impossible to conceive that he would make the one act of common justice that prompted this division—the making of an equal division of his property—contingent upon the happening of a highly improbable event. The instrument itself will not support such a conclusion. The high sense of justice which seems to have moved the grantor in all of his transactions relative to making provision for those dependent upon him, refutes it. There is a total lack of any adequate reason that would actuate him to leave the rights of some of his children to share equally with the others to depend upon so remote a contingency as the death of a brother or sister without issue. The result, the very thing that has happened, shows the absolute injustice of any such an arrangement. If William Walter is to be denied the right to participate in this distribution, it means that Catherine Frosch will get twice as much of her father's estate as her brother. If the decree of the court below be sustained, it means that the children of Barbara King would get twice as much of the estate of their grandfather as the children of John Walter, Jr. Such

reasoning is not in line with our interpretation, not only of the intention of the grantor, but of the express language of the deed itself.

We are therefore of the opinion that William Walter should have shared equally with the appellant Catherine Frosch in the distribution of the proceeds of the sale of the portion of George N. Walter, and the court below is instructed to modify the decree entered in accordance with this opinion.

Reversed with costs, and it is so ordered.          *Reversed.*

A petition for a rehearing was denied February 2, 1910.