# FROSCH v. WALTER.

APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 192. Argued March 17, 18, 1913.—Decided April 7, 1913.

A declaration in a deed of trust which clearly shows that the sole object of the instrument is to provide for certain specifically named children of the grantor who has other children, so dominates the instrument that the word " children " when thereafter used will be construed as referring to those particular children and not to include any other children of the grantor.

While the word " heirs " if used as a term of purchase in a will may signify whoever may be such at the testator's death, the word " children " as used in the deed involved in this case should be construed as including only those persons answering the description at the time of execution.

Surviving children of the grantor in such an instrument held to include children of one of the children specifically mentioned who had died prior to the grantor.

34 App. D. C. 338, reversed.

THE facts, which involve the construction of a deed conveying real estate in trust, are stated in the opinion.

*Mr. Ralph P. Barnard, Mr. M. J. Colbert* and *Mr. Benjamin F. Leighton,* with whom *Mr. Guy H. Johnson, Mr. H. T. Taggart* and *Mr. Oliver Metzerott* were on the brief, for appellants.

*Mr. James B. Archer,* with whom *Mr. Andrew Lipscomb* and *Mr. Jno. Lewis Smith* were on the brief, for appellee.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill in equity brought by Catharine Frosch against a trustee under a deed to compel him to transfer

to her or otherwise according to the construction of the instrument certain of the property conveyed by the deed. Other parties in interest are joined, and argument has been heard on their behalf. The facts are as follows: John Walter, the plaintiff's father, executed the deed on June 18, 1869. At that time his first wife had died leaving five children of whom the plaintiff is one, and he had married again.

Two of these children, John Walter, Junior, and William Walter, were of age. On the date mentioned their father gave them severally certain property in fee simple, and then made the deed before us, reciting therein that he was "desirous of making provision for his children by his first wife, to-wit: Catharine Magdalena Sophia Walter, [the plaintiff,] George N. Walter, and Mrs. Barbara King," these three then being under age. The final limitation is the one to be construed, but it will be understood better when the previous ones have been summed up.

The deed conveys to John Walter, Jr., certain parcels of land in trust, after certain contingent prior payments and after the death of the grantor, to hold the first named parcel and pay the rents and profits to the plaintiff for life and then to hold for the use of her children in fee. It similarly disposes of a bond for $10,000, given by John Walter, Jr., to his father as part consideration for the above mentioned gift to him, stating that it is "in order to equalize the division of my property between my said children." Then comes a gift of the second and third parcels upon like limitations and trusts for another daughter, Mrs. Barbara King, and also of secured notes for $7300, like the gift of the bond for Catharine, "in order more fully to equalize the division of his property, among his children." The fourth parcel is given upon similar trust for George N. Walter, the youngest son.

Then comes the doubtful clause. "In the event of the death of any one of the above-mentioned children of the

said John Walter, Senior, to-wit: Catherine, George & Barbara, without leaving any child or children or any issue of any child or children, then and in that case that the property held in trust by said Trustee, party of the second part, for the benefit of the party then dying without issue, shall be sold by said party of the second part, after the death of John Walter, Senior, and the proceeds paid over in equal portions to the surviving children of the said John Walter, Senior." John Walter, Senior, died on April 12, 1907. Before that date George had died in 1892 unmarried, and it is the disposition to be made of his share that is in question here. Barbara had died on August 23, 1904, leaving eight children, defendants herein, and John Walter, Jr., had died on November 17, 1906, leaving two children, defendants herein. William Walter, who with John had been provided for separately, survives and also is made a defendant. The grantor's second wife afterwards died, childless, and he married a third wife, who died leaving four children, also defendants in this suit. It may be remarked, if in any way material, that the grantor in 1900 provided for these last mentioned children by gifts similar to the above, subject like them to a life estate in himself.

To begin with the claim of the children of the third marriage, we are of opinion that it is unfounded. The word heirs if used as a term of purchase in a will, might be held to reach forward and to signify whoever might turn out to be such by the law in force and applicable at the testator's death. But this is a deed and the word is children. In view of what we have to say further, it is enough to state our opinion that the word as here used is confined to persons who answered the description at the moment when the deed was executed and spoke.

The Court of Appeals held that all persons were embraced who answered that description at that time, provided they survived the grantor, and directed a de-

cree in favor of the plaintiffs, Catharine and William Walter. 34 App. D. C. 338. But we take a different view. In the first place we are of opinion that the word children as used habitually in the deed means the three children for whom it declares at the outset that its object is to provide. That very declaration not only dominates the deed as a statement of the sole reason for the whole thing, but foreshadows the mode of referring to these three children in terms broad enough to signify all—'is desirous of making provisions for his children by his first wife'—a phrase only cut down by a 'to-wit: Catharine, George and Mrs. King.' When the grantor speaks of equalizing his property "between my said children" we understand him to refer to the three that have been mentioned together under that name. And we understand him to mean nothing different when later he speaks of equalizing the division of his property among his children. This interpretation perhaps is strengthened by the fact that 'my property' cannot properly include that which had been conveyed to his two elder sons and therefore that the equalizing contemplated was an equalizing as between the three children among whom his remaining property was divided by the present deed.

In the clause under consideration he shows whom he had meant by 'said children' when he says 'above mentioned children, . . . to-wit: Catharine, George and Barbara'—and when a few lines further on he says 'surviving children' the inference is strong that he means the children that up to that moment he had been talking about by that name throughout. It would seem that the grantor considered that he had made a division that would be fair as against the two elder children who had received their gifts in fee, if each of the three children and after them their descendants respectively received and retained the portion allotted to each. The groups set over against each other in his mind were the two adults

and the three minors. If one of the latter died without issue and his share went to the other two the equality was kept up because all of the three were equally subject to the chance, but assuming a substantial equality between the five lots the two adults being subject to no chance of loss had no claim to a chance of gain. It follows that William Walter is excluded, contrary to the decree of the Court of Appeals.

There remains the question whether children of Barbara King are entitled to share with Catharine as held by the Supreme Court. The Court of Appeals was of opinion that the interest of Barbara King was contingent upon her surviving the grantor; and that as she died before him her children could not take, the word children obviously being used in its proper sense and not embracing issue of such children, mentioned antithetically in the same sentence. It reached this conclusion because the direction to sell and distribute did not operate till after the death of the grantor and in its view the time of distribution determined the time of vesting an individual title in any child. On this point also we take a different view. The limitation over on the death of one of the three children without issue was of general import and scope, and was not confined to such a death before the grantor's. If George had died after his father instead of before the gift over still would have taken effect. Surviving children then means those of the three children who survive the child who dies without issue. The death of the child determines who shall take as surviving children. It is true that if that death happens before the grantor's the distribution is postponed, but that obviously is inserted to exclude any implication that in that event the grantor gives up the life estate that he has reserved throughout. It does not appear to us to warrant the conclusion that the time of the child's death with reference to this collateral fact was to affect the nature or quality of the interest given to the children

who survive. It is true that the gift is contained in the direction for distribution after sale, but in view of our opinion that it would have operated equally whenever George died, and that the reason of the postponement of distribution to after the grantor's death was solely on the grantor's own account, that fact cannot affect the result. The decree of the Court of Appeals is reversed and the original decree of the Supreme Court will be restored.

*Decree reversed.*


MR. JUSTICE PITNEY, concurring.


I concur in the result reached, and agree with the reasoning expressed in the opinion of the court except upon one point. The opinion states:

"The limitation over on the death of one of the three children without issue was of general import and scope, and was not confined to such a death before the grantor's. If George had died after his father, instead of before, the gift over still would have taken effect."

Upon this point I agree with the view expressed in the opinion of the Supreme Court of the District, that—"The equitable title to George's portion, subject to the life estate of John Walter, Sr., became vested in the complainant herein (Mrs. Frosch) and her sister, Barbara King, at George's death, May 14, 1892. Being so vested, Barbara's share passed by her death to her eight children; and William Walter, the children of John Walter, Jr., and the four children of the third wife, have no share in the said property."