Gabriel **DI GIOVANNI**, Appellant,

v.

Anthony **DI GIOVANNANTONIO**,
Jr., Appellee.

No. 12742.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 9, 1955.

Decided March 15, 1956.

Mr. Edgar A. Wren, Washington, D. C., for appellant. Mr. James K. Foley, Washington, D. C., was on the brief for appellant.

Mr. Elmer B. Collins, Jr., Washington, D. C., for appellee.

Before PRETTYMAN, FAHY and WASHINGTON, Circuit Judges.

PRETTYMAN, Circuit Judge.

Gabriel Di Giovanni petitioned for letters of administration in the estate of his half brother, Antonio Di Giovannantonio. Our appellee, Anthony Di Giovannantonio, Jr., also filed a petition, claiming to be the decedent's son. The contest went to trial, and the District Court awarded letters to Anthony, Jr. For the sake of brevity and clarity we shall call these parties Gabriel, Antonio, and Anthony, Jr., respectively.

Anthony, Jr., is now conceded to be the son of the decedent, Antonio; the dispute is whether he is a legitimate son.[1] The solution of that issue depends upon whether a common-law marriage existed between his mother and Antonio, and this issue in turn depends largely upon whether the mother was or was not married to one Vincenzo Merlo at the time she was living with Antonio. The mother had died before the trial in these proceedings.

Anthony, Jr., sought to show that his mother and Antonio lived together in open repute as husband and wife for some years, from about 1907 to 1918. In brief his evidence was that the two had lived together at various residences in the District of Columbia, that children were born, four of whom survive, and that a normal family relationship existed during this time. He maintained that a common-law marriage was thus established, and he argued that this marriage was to be presumed valid and that Gabriel failed at the trial to sustain the burden of proof upon one assailing a presumptively valid marriage. The District Court adopted his treatment of the problem. Considering the birth of children and the evidence of repute and cohabitation, it found the common-law marriage as a fact. Then it presumed the marriage to be valid, cast upon Gabriel the burden of showing invalidity, and found his evidence insufficient. Later Gabriel moved for a new trial upon the basis of newly discovered evidence, and the court denied the motion.

Evidence favorable to Gabriel was in several parts. He showed by cross examination of Anthony, Jr., that there were a half brother and a half sister, older than Anthony, Jr., both of whom were children of the mother of Anthony, Jr., and were known by the name "Merlo". It also appeared that the mother left Antonio in 1918 or 1919, moving to New York and taking the children with her. The separation was permanent and complete. At least from the time she left Washington she lived under the name "Merlo". Her maiden name was Cevola. Anthony, Jr., testified that he, himself, was known at the time of the

---

1. A "child" may be appointed administrator, 31 Stat. 1234 (1901), as amended, D.C.Code, § 20-204 (1951), but it was long ago established that "Child" meant at common law a legitimate child. Bouvier, Law Dictionary, and cases there assembled; and see Frosch v. Monday, 34 App.D.C. 338, 352 (D.C.Cir.1910), reversed on other grounds Frosch v. Walter, 228 U.S. 109, 33 S.Ct. 494, 57 L.Ed. 750 (1913). In this jurisdiction, although a "child" may inherit, 31 Stat. 1342 (1901), as amended, D.C.Code, § 18-101 (1951), and 31 Stat. 1249 (1901), as amended, D.C.Code, § 18-701 et seq. (1951), illegitimate children are entitled to take only from the mother. 31 Stat. 1344 (1901), as amended, D.C.Code, § 18-107 (1951); 31 Stat. 1250 (1901), D.C.Code, § 18-716 (1951). In the case at bar Anthony, Jr., if an illegitimate child, could not inherit from his father.

trial by the surname "Merlo", that he had had that name when he was young and had been using it a good many years. Gabriel showed that in 1921 the decedent, Antonio, executed a deed of trust in which he described himself as unmarried. Gabriel also showed that in 1927 Antonio applied for a license to marry one Anninia Santilli and recited he had had no former marriages. He was actually married to Anninia by a priest on October 2, 1927. Gabriel showed that one Vincenzo Merlo was divorced from the mother in 1934 by decree of a New Jersey court.

Gabriel's newly discovered evidence was a certificate, obtained through the good offices of the Italian Embassy, of the marriage in Italy of appellee's mother and Vincenzo Merlo in July, 1905.

■■ We deal first with the motion for a new trial. It is argued that Gabriel did not appeal from the denial of a new trial, since the notice of appeal ran literally only to the order of March 10, 1955, granting the letters of administration. We think the argument cannot be sustained. The motion was filed within ten days of the entry of judgment; it was clearly a motion under Rule 59 of the Federal Rules of Civil Procedure, 28 U. S.C.A., and was part of the same proceeding which produced the judgment from which Gabriel appeals. Until that motion was disposed of, the judgment lacked the finality requisite for appeal.[2] Thus the order denying the motion for a new trial is a ruling that produced and is included within the final judgment, and an appeal from that judgment properly brings the order before the reviewing court.[3] Appellant here included in his designation of the record on appeal all papers relating to the motion, including the order of denial. He designated the whole record and stated the point in his brief. We think the denial of the motion is properly before us.

■ We are of opinion the trial court erred in denying the motion. The certificate of a ceremonial marriage of one of the parties, antecedent to an alleged common-law marriage, was clearly relevant and material. It was newly discovered. It was secured with difficulty and was not available at the time of the trial. Gabriel's counsel had to rely upon official sources to secure the document. He made his request of the Italian Embassy on September 30, 1954. The case came on for trial on November 29, 1954, about two months after the request was made. The desired certificate came through about a week after the decree of the court was entered on March 10, 1955. The motion was made promptly on March 18, 1955.

The trial court did not state why it denied the motion. It may have been because it felt due diligence had not been shown, or it may have been because it thought the certificate immaterial. This latter view would be premised upon the view that, the common-law marriage having been established, a divorce from the prior marriage would be presumed. We shall discuss that subject in a moment. The evidence of the certificate being a key piece of evidence in the litigation and not cumulative, and bona fide efforts to secure it having been made in time, we think the court erred in refusing to grant the motion.

2. Green v. Reading Co., 180 F.2d 149 (3d Cir., 1950); Healy v. Pennsylvania R. Co., 181 F.2d 934 (3d Cir., 1950), certiorari denied 340 U.S. 935, 71 S.Ct. 490, 95 L.Ed. 674 (1951); and see Hamilton v. United States, 78 U.S.App.D.C. 316, 140 F.2d 679 (D.C.Cir., 1944). Rule 60(b) makes provision for motions for new trial upon newly discovered evidence not discovered within the ten-day period allowed for a Rule 59 motion.

3. See Gersing v. Chafitz, 77 U.S.App.D.C. 38, 133 F.2d 384 (D.C.Cir., 1942); Green v. Reading Co., 180 F.2d 149 (3d Cir., 1950); Agostino v. Ellamar Packing Co., 191 F.2d 576 (9th Cir., 1951); Libby, McNeill & Libby v. Malmskold, 115 F.2d 786 (9th Cir., 1940); Ford Motor Co. v. Busam Motor Sales, 185 F.2d 531 (6th Cir., 1950); Roth v. Hyer, 142 F. 2d 227 (5th Cir., 1944), certiorari denied 323 U.S. 712, 65 S.Ct. 38, 89 L.Ed. 573 (1944).

■■ In light of the foregoing, discussion of the substance of the controversy can be brief. It is true that, where a ceremonial marriage is established and it is shown that one of the parties was previously married, in the absence of proof on the point it is generally presumed that the previous marriage was dissolved by divorce or death.[4] It may be doubtful that any such presumption arises in respect to a later alleged common-law marriage.[5] However that may be, in the case at bar, if Merlo was ceremonially married to the woman prior to Antonio's relationship with her, proof that Merlo was alive in 1934 and obtained a divorce from her in that year, coupled with her continued use of Merlo's name, completely precludes any presumption that their marriage had terminated at the time of the alleged common-law relationship: hence no common-law marriage between the woman and Antonio could possibly arise. Under those circumstances it would not matter what the woman and Antonio agreed, intended, or held out to the community.

The trial court should reconsider the case in the light of the marriage certificate. Any new judgment it later enters will be subject to appeal in the normal course. There is no need for us to consider the other contentions of the parties.

Reversed and remanded.

4. Hatfield v. United States, 127 F.2d 575 (2d Cir., 1942); In re Vargo's Estate, 282 App.Div. 701, 122 N.Y.S.2d 4 (1953); Doertch v. Folwell Engineering Co., 252 Mich. 76, 233 N.W. 211 (1930); Schaffer v. Richardson's Estate, 125 Md. 88, 93 A. 391, L.R.A.1915E, 186 (1915); Turner v. Williams, 202 Mass. 500, 89 N.E. 110, 24 L.R.A.,N.S., 1199 (1909); Cartwright v. M'Gown, 121 Ill. 388, 12 N.E. 737 (1887).

5. Selected Essays on Family Law 288 n. 9 (Ass'n of Am. L. Schools 1950).