CLARA AMALIA MELDAHL, *et al.* Appellants, *vs.* C. EDGAR
WALLACE, Appellee.

*Opinion filed October 27, 1915—Rehearing denied Dec. 10, 1915.*

1. DEEDS—*when trustees cannot dispute the validity of a deed.*
Where a deed is made to the grantor's daughters conveying the
grantor's estate to them as trustees and they accept the trust in
writing, they are not entitled to thereafter dispute the validity of
the deed on the ground that the grantor was mentally incompetent.

2. SAME—*ratification may cure insufficiency of power of attor-
ney.* Even though the power of attorney under which an accept-
ance by one of the trustees in a trust deed was signed may not have
been sufficiently broad in its terms to authorize the acceptance, yet
if the trustee thereafter ratifies the deed by acting thereunder she
cannot dispute the validity of the deed.

3. SAME—*what is sufficient delivery of stocks and bonds.* Stocks
and securities conveyed by deed are sufficiently delivered where the
grantees went with the grantor to the safety deposit company and
deposited the stocks and securities in a box under a signed agree-
ment that the box could only be opened by the grantor when ac-
companied by two of the three grantees but could be opened by any
two of the grantees; and the delivery is not affected by the fact
that the grantor kept both keys to the box for some time before
she gave one of them to the grantees.

4. SAME—*vested remainder defined.* A vested remainder is one
that throughout its continuance gives to the remainder-man or his
heirs the right to the immediate possession, whenever and however
the preceding estate may determine, and there must be some cer-
tain person in being and ascertained who answers the description
of remainder-man at some time during the continuance of the par-
ticular estate and not merely at the time fixed for its termination.

5. SAME—*contingent remainder defined.* A contingent remain-
der is one which is limited by the instrument creating it either to a
person not yet ascertained or not yet in being or so as to depend
upon a dubious and uncertain event, the uncertainty not being
whether the remainder-man will ever enjoy the estate but whether
there will ever be a right to such enjoyment.

6. SAME—*the law favors vesting of estates but will not override
donor's intention.* The law, having regard to the public welfare,
is inclined to regard an estate as vested and thereby promote the
free transfer of property, but it will not override the intention of
the donor as expressed in the instrument.

7. SAME—*remainder may be contingent though event determining the preceding estate is certain.* Even though the event which is to determine the preceding estate,—the death of the grantor,—is certain to occur, yet the remainder is contingent if the persons who are to succeed to the estate in remainder are not ascertained.

8. SAME—*when a remainder created by a deed is contingent.* A deed conveying all of the grantor's estate to her three named daughters and the survivors of them, in trust, to hold the title during the grantor's life and at her death to divide the property equally among themselves, and make conveyances, if a division is agreed upon, or through commissioners appointed by the court, creates a contingent remainder in the daughters, where it is further provided that each daughter shall have power to will or devise her respective share, and in case of the death of any daughter, intestate, before the grantor's death, then the children of such deceased daughter shall take the parent's share, and if she leaves a husband, the latter shall have the same use of the property, both real and personal, as he would have under the statutes of Illinois; and under such deed the husband of a daughter whose death has occurred in the lifetime of the grantor does not take as heir but takes under the terms of the deed, as surviving husband.

APPEAL from the Superior Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding.

HUGH O'NEILL, and JOHN S. HUMMER, for appellants.

JAMES D. WALLACE, and WILLIAM H. GRUVER, (WILLIAM KARR STEELE, of counsel,) for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This is an appeal by Clara Amalia Meldahl and Alice Eline T. West from a decree entered in the superior court of Cook county construing a deed made by Eline T. Johnson to her three daughters, Clara Amalia Meldahl, Alice Eline T. West and Olga Therese Wallace, and ordering a partition of the real estate and a division of the personal property therein described. Olga Therese Wallace died before her mother, who was life tenant of the property, leaving C. Edgar Wallace, her husband, surviving her, who

was appointed administrator of her estate, and the controversy was between him and the surviving daughters, Clara Amalia Meldahl and Alice Eline T. West, over the question whether he had any interest in the property. They have assigned errors on the record and he has assigned cross-errors.

On February 6, 1911, Eline T. Johnson made, acknowledged and delivered to her three daughters, Clara Amalia Meldahl, Olga Therese Wallace and Alice Eline T. West, the following deed, which was accepted by the grantees in writing, under their hands and seals, as part of the deed:

"This indenture witnesseth, that I, the grantor, Eline T. Johnson, of the city of Chicago, in the county of Cook and State of Illinois, for and in consideration of the sum of one dollar to me in hand paid, and other good, valuable and sufficient consideration, the receipt of all which is hereby acknowledged, do hereby convey and warrant to my daughters, Clara Amalia Meldahl and Olga Therese Wallace, of the city of Chicago, and Alice Eline T. West, of the city of Los Angeles and State of California, the following described real estate, to-wit: [Describing four tracts of real estate.] In trust, nevertheless, with the rights, powers and authority and for the uses and purpose hereinafter set forth.

"I, the grantor, Eline T. Johnson, do by these presents grant, assign, convey, alien, transfer and set over unto said trustees, and the survivor or survivors of them, all and singular the stocks, bonds, promissory notes, debts, choses in action, evidences of debt, property and effects of every description, real, personal and mixed, belonging to me, the said grantor, wherever the same may be situated, except my personal goods and chattels and household effects, in trust, nevertheless, with the rights, powers and authority and for the uses and purposes hereinafter set forth.

"To have and to hold the title to all my said estate herein conveyed, both realty and personalty, for and during my natural life, and upon my decease to divide the same equally between themselves, and to convey the same when such a division has been agreed upon, and in case of their not being able to agree upon a division, that they, or any one of them, may apply to a court of competent jurisdiction to appoint a commissioner or commissioners to effect an equitable and equal division of the same. I hereby give my said daughters, and each of them, the power to will or devise their respective share or interest herein, both as to realty and personalty, as they see fit, and that in case of the decease of any of my daughters herein named, intestate, before my death, then in that case the children of such deceased daughter shall take

their parent's share, both as to realty and personalty, and if any such deceased daughter so dying intestate leaves a husband surviving, that the husband have the same right to the use and enjoyment of both the realty and personalty and the benefit of it as given by the statutes of the State of Illinois. Said trustees, and the survivor or survivors of them, to have the joint custody of all my personalty hereby conveyed, transferred and set over to them, jointly with myself, it being hereby agreed that no transfer or conveyance shall be made of the same, or any part thereof, without the concurrence of myself and any two of my said trustees.

"And I, the grantor, Eline T. Johnson, do herein and hereby reserve unto myself the right to manage and control the real estate as to the renting, repairing and collecting of rents and appointing agents to rent or collect the same, and also reserve to myself the full, free and unreserved control and use of all the income of my said estate, both real, personal and mixed, during my natural life, intending that all the rents of my real estate shall be paid promptly to me or any agent that I may designate, and that all the income or interest of any evidences of indebtedness or dividends of any stock that I may hold shall be paid directly to me as the same may become due and payable, without having to go through the hands of my said trustees.

"The conveyance made herein to said trustees shall be to said trustees and the survivor or survivors of them, and all the rights, powers and authority herein given said trustees shall be to them and the survivor or survivors of them.

"Witness my hand and seal this fourth day of February, A. D. 1911.

ELINE T. JOHNSON. (Seal)

"We, the undersigned, named in the foregoing instrument as trustees thereunder, do hereby accept the trust in said instrument confided to us.

"Witness our hands and seal this sixth day of February, A. D. 1911.

CLARA AMALIA MELDAHL,  (Seal)<br>
OLGA THERESE WALLACE,  (Seal)<br>
ALICE ELINE T. WEST,  (Seal)<br>
By Clara Amalia Meldahl, her attorney in fact."

Olga Therese Wallace died on August 5, 1911, intestate and childless, leaving C. Edgar Wallace, her husband, and her two sisters and mother, her only heirs-at-law. Eline T. Johnson, the grantor, died on October 16, 1911, and on the same day Clara Amalia Meldahl inaugurated this controversy concerning the property by filing her bill in the superior court of Cook county for partition, alleging that

C. Edgar Wallace, the surviving husband, claimed some interest in the property but had none, and C. Edgar Wallace joined in the contest on the same day by notifying the Northern Trust Safe Deposit Company not to allow the safety deposit box to be opened. Three days after Clara Amalia Meldahl filed her bill in the superior court C. Edgar Wallace filed his bill in the circuit court for partition and a division of the personal property, making himself a defendant to his bill in his capacity as administrator of the estate of his deceased wife, together with Clara Amalia Meldahl and Alice Eline T. West, individually and as trustees. He answered his bill in the circuit court as administrator, alleging that as such he was entitled to possession of a one-third of the personal property which had vested in his deceased wife. He also as administrator filed his cross-bill in the circuit court against himself as an individual, making the same claims as in his answer. He answered the bill for partition of the real estate in the superior court, alleging that he was entitled to a one-sixth interest in the real estate, and he also filed a cross-bill in that suit, making the same claim to a one-sixth interest. He amended his bill in the circuit court, and that court sustained demurrers to it as amended, and he elected to stand by the amended bill. That court overruled demurrers to the cross-bill, and Clara Amalia Meldahl elected to stand by her demurrer but afterward answered the cross-bill, denying that any interest in the property vested in Olga Therese Wallace in her lifetime or that C. Edgar Wallace had any interest in the personal property. The superior court overruled demurrers to the cross-bill in that court and the bill was answered. The suit in the circuit court was transferred to the superior court and the causes were consolidated. Alice Eline T. West filed her cross-bill in the consolidated causes, alleging that her mother was incapable of transacting business and that her deed was void for want of capacity to make it. Clara Amalia Mel-

dahl answered the cross-bill, admitting its allegations, and C. Edgar Wallace answered, disputing them. The consolidated cause was tried and argued in June, 1913, and taken under advisement. Eighteen months afterward, in December, 1914, the chancellor was again advised as to the facts and law by a re-argument, and a decision was reached and a decree was entered in March, 1915. The chancellor by the decree found that Eline T. Johnson was competent to make the deed and it was valid; that the trust was accepted by the trustees; that upon the execution of the deed the equitable fee simple title in remainder in the real estate vested in the grantees, Clara Amalia Meldahl, Olga Therese Wallace and Alice Eline T. West, in undivided equal parts; that upon the death of Olga Therese Wallace, her husband, C. Edgar Wallace, became vested with the equitable fee simple title to an undivided one-sixth of the real estate; that an equitable one-third interest in the personal property vested in Olga Therese Wallace on the execution of the deed and at her death passed to C. Edgar Wallace as administrator of her estate and that he was entitled to the possession thereof. The court dismissed the bill of Clara Amalia Meldahl for want of equity, and also dismissed for want of equity the bill of complaint of C. Edgar Wallace filed in the circuit court.

The chancellor heard a great deal of evidence concerning the mental and physical capacity of Eline T. Johnson to execute the deed, and found that she was of sound mind and memory and capable of executing it, and that it was valid. No attention will be given to that question of fact in this court for the reason that the grantees were not entitled to dispute the validity of the deed. When it was executed they accepted the conveyance and the trust, so that it became as much their deed as that of their mother. The acceptance of Alice Eline T. West, who lived in California, was made by her attorney in fact, and it is said that the acceptance was not valid because the power of at-

270 — 15

torney was not sufficiently broad for that purpose. The power of attorney was very broad in its terms, but whether it authorized the acceptance of the conveyance and trust or not, she ratified the deed by what she afterward did. After the deed was executed, Eline T. Johnson, the grantor, and Clara Amalia Meldahl and Olga Therese Wallace went to the Northern Trust Safe Deposit Company and rented a safe deposit box, in which they deposited the stocks and securities conveyed by the deed, under an agreement by which the box could not be opened except by or in the presence of two of the grantees, and in the summer of 1911 Clara Amalia Meldahl and Alice Eline T. West opened the safety deposit box and took from it $25,000 worth of stock upon which a dividend was to be declared, and the proceeds were divided among the three grantees. The three grantees on February 28, 1911, executed a paper acknowledging that they had received by deed from their mother the real estate, and agreeing to pay an indebtedness of their mother of $4000 to T. Svanoe if their mother did not pay the debt in her lifetime. In September, 1911, less than a month before the death of Eline T. Johnson, Clara Amalia Meldahl and Alice Eline T. West, as surviving trustees, filed their bill against their mother in the superior court of Cook county, alleging the execution of the deed and the acceptance of the trust and the death of Olga Therese Wallace, and asking the court to construe the deed and determine how the real and personal property of the trust might be sold, re-invested or otherwise disposed of and to take and retain jurisdiction over the trust estate. Eline T. Johnson answered the bill, admitting the execution of the deed but objecting to conferring authority on the trustees to make sales of the property and re-invest the proceeds and denying that there was occasion for the court to take jurisdiction of the trust estate for any purpose. There is no evidence nor is there any claim that the appellants made any discovery as to the mental capacity of the grantor

after making these admissions and obtaining the $25,000 by means of the deed. If the deed was good and valid when they joined in its execution, obtained the $25,000, made their acknowledgments that they had received the deed and filed their bill in the court, it was good enough to prevent them from besmirching the name and memory of their mother by testimony of indelicate acts committed by her, or her unusual costume on one occasion at her summer home at Delavan lake, or other things tending to show want of mental capacity.

It is argued, however, that notwithstanding the admissions of fact, the deed was ineffective as to the personal property for want of an actual delivery of the stocks and securities to the grantees. All the counsel are agreed that such a delivery was necessary to make the deed effective and establish the trust, and inasmuch as there is agreement among counsel on that subject we will not consider the question of the necessity of an actual delivery. If a delivery was necessary, it was made. When Clara Amalia Meldahl and Alice Eline T. West went with their mother to the safety deposit company and deposited the securities in the safety box it was under a signed agreement that the box could only be opened by Eline T. Johnson when accompanied by any two of the three grantees but could be opened by any two of the grantees at any time without the presence of the grantor. The agreement was signed by Eline T. Johnson, Clara Amalia Meldahl and Olga Therese Wallace, and Alice Eline T. West afterward signed an identification card for the same purpose. The grantor thereby deprived herself of power to gain access to the box by any process whatever or to gain possession of the stocks or securities. She took the keys away at the time and afterward let her daughters have one of them to get the $25,000 of stock out of the box, but the possession of the key, or both keys, at any time did her no good, for without participation of at least two of the grantees she could

not have gained access to the securities. The deed was valid and effectual as a conveyance of the property.

The validity of the deed having been determined, the remaining question upon which the correctness of the decree depends is whether the remainder was vested in Olga Therese Wallace at the time of the execution of the deed. If it was, her surviving husband, C. Edgar Wallace, is entitled, as her administrator, to the possession of the share of the personal estate which vested in her and to one-sixth of the real estate as heir by virtue of the statute. The chancellor found that the remainder was vested. The accepted definition of a vested remainder is, that it is one that throughout its continuance gives to the remainder-man or his heirs the right to the immediate possession, whenever and however the preceding estate may determine. There must be some certain defined person in being and ascertained who answers the description of remainder-man at some time during the continuance of the particular estate and not merely at the time fixed for its termination. A contingent remainder is one that is limited to take effect either to a dubious or uncertain person or upon a dubious or uncertain event. It is limited by the instrument creating it either to a person not yet ascertained or not in being, or so as to depend upon a dubious and uncertain event which may never happen. The uncertainty which distinguishes it is not the uncertainty whether the remainder-man will ever enjoy it, but the uncertainty whether there will ever be a right to such enjoyment. (2 Blackstone's Com. 169; 4 Kent's Com. 406; *Brown* v. *Brown,* 247 Ill. 528; *Lachenmyer* v. *Gehlbach,* 266 id. 11.) In determining to which class a particular gift belongs, the law, always having regard to the public welfare, is inclined to treat the estate as vested and thereby promote the free transfer of property, but it ought not to, and does not, override or set aside the will of the donor and will give effect to his intention as expressed in the instrument grant-

ing the remainder. By the deed in this case the legal title
to the property, real and personal, was conveyed to the
grantees in trust for and during the natural life of the
grantor, who retained the entire equitable estate. The re-
mainder was limited to take effect upon her death, which
was an event certain to occur, and as the event which by
express limitation would determine the precedent estate was
certain to happen, the remainder was not limited upon a
dubious or uncertain event. If, however, the persons who
would succeed to the estate in remainder were not ascer-
tained the remainder was contingent. In this respect that
which distinguishes a vested from a contingent remainder
is the certainty who the person who will succeed to the
estate in remainder will be. The language employed in the
deed does not manifest an intention to grant a vested re-
mainder to persons in being and already ascertained, but
rather that the persons who would succeed to the estate in
remainder should be ascertained at the death of the grantor.
The conveyance was to the grantees and the survivor or
survivors of them, and at the death of the grantor they
were directed to divide the estate equally among themselves
and to make conveyances when the division should be
agreed upon or should be effected through a commissioner
or commissioners appointed by a court. Each grantee was
to have power over a one-third share or interest, to will or
devise the same, both as to realty and personalty, as such
grantee might see fit; but in case of the death of either
one intestate, in the lifetime of the grantor, leaving chil-
dren, the children were to take their parent's share, and if
such deceased daughter so dying intestate should leave a
husband, the husband should have the same right to the
realty and personalty and to the benefit of both given by
the statute. At the determination of the particular estate
and the trust there was to be a division, and if anyone had
died, it was to be found, first, whether that one had exer-
cised the power given to devise or to dispose by will of the

share that otherwise would have gone to her. If the power of appointment by will had not been exercised and there were no children or surviving husband the division would be between the survivors, but if there were children they would take the share of the parent, and if there was a husband surviving he would take the same interest given to a surviving husband by the statute. If there had been an intention to grant a vested remainder there would have been no occasion for any one of these provisions. If the estate in remainder vested, the one in whom it was vested could by law devise her interest without any provision conferring power upon her to do so, and if she should die intestate, leaving children, the estate would descend, under the statute, to them, and in any event a surviving husband would have the rights and interest given to him by the statute. If the grantees had a vested remainder they could divide the estate without the intervention of trustees and either one could compel a partition at any time.

A power to dispose of an estate by will does not prevent the vesting of a remainder which otherwise would be vested, although the execution of the power may destroy the remainder. (*Harvard College* v. *Balch,* 171 Ill. 275.) In such a case the power of appointment does not prevent the vesting of the estate, but the estate vests subject to be divested by the execution of the power. That rule, however, can have no influence in this case unless the several grantees had vested estates in the property out of which the power was to take effect. The grantor had no intention of granting such estates, for the manifest reason that if the estates were vested the grantees could, as already noted, devise the same without any provision conferring power upon them to do so. If at the time of the execution of the deed it was intended to vest the remainder in the grantees there would have been no reason for providing for a conveyance when a division should be made. During the life of the grantor the trustees had no duties

to perform, and neither had any control over the estate nor anything to do with the income or management of it. The sole duty imposed upon them was to divide the estate upon the death of the grantor according to the limitations of the deed, which naturally implies a gift to the persons then entitled. (*McCartney* v. *Osburn,* 118 Ill. 403; *Scofield* v. *Olcott,* 120 id. 362; *Kingman* v. *Harmon,* 131 id. 171.) That rule is subject to the exception that if the distribution appears to be postponed for the convenience of the fund or property, as for the purpose of letting in a prior estate for life, and not for reasons personal to the legatee or devisee, the gift in remainder vests at once, but in this case the gift was postponed for a definite ascertainment of the persons who would take the remainder. The grantor fixed the time for such ascertainment at her death. Her expressed intention was that the persons to take the remainder should be ascertained, not during the continuance of the particular estate but at its termination. The rule only operates to vest the estate, in accordance with the general rule, in some person in being and definitely ascertained, as in the cases of *Scofield* v. *Olcott, supra,* where the residuary estate was devised to William Abbey, *Thomas* v. *Thomas,* 247 Ill. 543, where the remainder was devised to the children of Lizzie Thomas, and other similar cases.

The intent of the grantor as expressed in the deed leads to the conclusion that the remainder was not vested in Olga Therese Wallace but was contingent, and as she died prior to the death of the life tenant, her surviving husband took no part of the real estate as her heir and was not entitled to one-third of the personal estate as her administrator. The chancellor erred in finding that the remainder was vested.

C. Edgar Wallace has assigned cross-errors, one of which relates to the finding of the decree as to real estate at Delavan lake, in Wisconsin, which the court ordered partitioned with the other lands. That real estate was included

in the original cross-bill of Wallace but was stricken out by amendment and was erroneously included in the decree. The other cross-error questions the dismissal of his amended bill in which he claimed one-third of the personal property as purchaser, by virtue of the deed. Upon demurrers being sustained to that bill he elected to stand by it and it was dismissed. By the terms of the deed he was to have the same right to the use and enjoyment of both the realty and personalty, and the benefit of it, as given by the statutes of this State. He takes by virtue of the deed one-third of the personal property as surviving husband, and it was error to sustain the demurrers to his bill by which he claimed the same and to dismiss it.

The decree is reversed and the cause is remanded, with directions to the superior court to overrule the demurrers to the amended bill of C. Edgar Wallace. Each party will pay one-half the cost of the appeal.

*Reversed and remanded, with directions.*